MORGAN, LEWIS & BOCKIUS LLP
Eric Meckley (Bar No. 168181)
eric.meckley@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Tel: +1.415.442.1000

Jeremy P. Blumenfeld (admitted *pro hac vice*)
jeremy.blumenfeld@morganlewis.com
Brian W. Sullivan (admitted *pro hac vice*)
brian.sullivan@morganlewis.com
2222 Market Street
Philadelphia, PA 19103-3007
Tel: +1.215.963.5000

MORGAN, LEWIS & BOCKIUS LLP
Christopher J. Boran (admitted *pro hac vice*)
christopher.boran@morganlewis.com
110 North Wacker Drive, Suite 2800
Chicago, IL 60606-1511
Tel: +1.312.324.1000

Abbey M. Glenn (Bar No. 267751)
abbey.glenn@morganlewis.com
1111 Pennsylvania Ave, NW
Washington, DC 20004-2541
Tel: +1.202.739.3000

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| SARAH PERSONETTE, JAMES SULLIVAN, and DALANA BRAND,<br><br>Plaintiffs,<br><br>vs.<br><br>ELON MUSK, ET AL.,<br><br>Defendants. | Case No. 3:24-cv-6266-JCS<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT'S SECOND CAUSE OF ACTION**<br><br>Hearing Date: January 16, 2025<br>Time: 10:00 a.m.<br>Location: Courtroom 8<br>Hon. Jacqueline Scott Corley<br><br>Complaint Filed: September 5, 2024 |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

MOTION TO DISMISS SECOND CAUSE OF ACTION OF
COMPLAINT
CASE NO. 3:24-cv-06266-JSC

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Please take notice that on January 16, 2025 at 10:00 a.m. or as soon thereafter as counsel may be heard, before the Honorable Jacqueline Scott Corley of the San Francisco Courthouse of the above-captioned court, located at 450 Golden Gate Avenue, Courtroom 8, San Francisco, CA 94102, Defendants Elon Musk; X Corp.; and the Twitter, Inc. Change of Control and Involuntary Termination Protection Policy (collectively, "Defendants") will, and hereby do, move this Court, pursuant to Fed. R. Civ. P. 12(b)(6), for an order dismissing the Second Cause of Action of the Complaint for Severance Benefits, Equitable Relief, and Statutory Penalties (ERISA) ("Complaint") filed by Plaintiffs Sarah Personette, James Sullivan, and Dalana Brand ("Plaintiffs"), for failure to state a claim upon which relief can be granted.  This motion is based on the following grounds:

The Second Cause of Action of the Complaint against Defendants Musk and X Corp. under ERISA section 510, 29 U.S.C. § 1140, fails to state a claim because the only purported equitable relief Plaintiffs seek is not "equitable" or "appropriate" and is not available to them on the facts alleged in the Complaint as a matter of law.  29 U.S.C. § 1132(a)(3).

Defendants request that the Court dismiss the Second Cause of Action without leave to amend.  This Motion to Dismiss is based on this Notice of Motion, the Memorandum of Points and Authorities, the pleadings on file herein, and any other written or oral materials as may be presented before the Court takes this Motion under submission.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 1 -

MOTION TO DISMISS SECOND CAUSE OF ACTION OF
COMPLAINT
CASE NO. 3:24-cv-06266-JSC

1

Dated:  November 15, 2024                    MORGAN, LEWIS & BOCKIUS LLP

2

3                                            By   /s/ Christopher Boran
                                                Christopher Boran
4                                               Eric Meckley
                                                Jeremy Blumenfeld
5                                               Abbey Glenn
                                                Brian Sullivan
6

7
                                             Attorneys for Defendants
8                                            ELON MUSK; X CORP.; TWITTER, INC.
                                             CHANGE OF CONTROL AND
9                                            INVOLUNTARY TERMINATION
                                             PROTECTION POLICY
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 2 -                    MOTION TO DISMISS SECOND CAUSE OF ACTION OF
                                             COMPLAINT
                                             CASE NO. 3:24-cv-06266-JSC

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................. 1

II.   RELEVANT BACKGROUND ......................................................................... 2

   A.    The Plan ............................................................................................... 2

   B.    Plaintiffs, Their Administrative Claims and Appeals, And The Complaint ........... 3

III.  THE SECOND CAUSE OF ACTION SHOULD BE DISMISSED BECAUSE
      PLAINTIFFS' REQUESTED REMEDIES ARE NOT EQUITABLE OR
      AVAILABLE TO THEM ................................................................................. 5

   A.    Legal Standard ..................................................................................... 5

      1.    Surcharge Is Not Available Because The Plan Is Exempt From
            ERISA's Fiduciary Provisions ................................................ 6

      2.    Plaintiffs' Claims for Restitution, Disgorgement, And An Equitable
            Lien Are Not Appropriate Equitable Relief ........................... 9

      3.    The Complaint's Allegations Demonstrate That Plaintiffs Cannot
            Recover Front Pay ................................................................ 12

      4.    The Complaint Fails To Adequately Plead The Elements Of
            Equitable Estoppel .............................................................. 12

IV.   CONCLUSION .............................................................................................. 15

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- i -

MOTION TO DISMISS SECOND CAUSE OF ACTION OF
COMPLAINT
CASE NO. 3:24-cv-06266-JSC

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Abatie v. Alta Health & Life Ins. Co.*,
458 F.3d 955 (9th Cir. 2006) ................................................................................................ 3

*Agrawal v. Musk*,
2024 WL 4654442 (N.D. Cal. Nov. 1, 2024) ...................................................................... 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .............................................................................................................. 5

*Bakri v. Venture Mfg. Co.*,
473 F.3d 677 (6th Cir. 2007) ................................................................................................ 7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .............................................................................................................. 5

*Bilyeu v. Morgan Stanley Long Term Disability Plan*,
683 F.3d 1083 (9th Cir. 2012) ............................................................................................ 11

*Bond v. Marriott Int'l, Inc.*,
637 F. App'x 726 (4th Cir. 2016) ......................................................................................... 7

*Caldwell v. Musk*,
2024 WL 4654272 (N.D. Cal. Nov. 1, 2024) ............................................................... passim

*Callan v. Merrill Lynch & Co.*,
2010 WL 3452371 (S.D. Cal. Aug. 30, 2010) ................................................................ 6, 7, 9

*CIGNA Corp. v. Amara*,
563 U.S. 421 (2011) .............................................................................................................. 6

*Colburn v. Hickory Springs Mfg. Co.*,
448 F. Supp. 3d 512 (E.D.N.C. 2020) ............................................................................ 6, 8, 9

*Collazo v. Infonet Servs. Corp.*,
2015 WL 13917163 (C.D. Cal. Apr. 8, 2015) ...................................................................... 9

*Demery v. Extebank Deferred Comp. Plan (B)*,
216 F.3d 283 (2d Cir. 2000) .................................................................................................. 8

*Depot, Inc. v. Caring for Montanans, Inc.*,
915 F.3d 643 (9th Cir. 2019) ............................................................................................ passim

*Duggan v. Hobbs*,
99 F.3d 307 (9th Cir. 1996) ........................................................................................ 6, 7, 8, 9

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- ii -

MOTION TO DISMISS SECOND CAUSE OF ACTION OF
COMPLAINT
CASE NO. 3:24-cv-06266-JSC

*Firestone Tire & Rubber Co. v. Bruch*,
    489 U.S. 101 (1989) ................................................................................................ 3

*Gabriel v. Alaska Elec. Pension Fund*,
    773 F.3d 945 (9th Cir. 2014) ............................................................................ passim

*Greany v. W. Farm Bureau Life Ins. Co.*,
    973 F.2d 812 (9th Cir. 1992) ........................................................................... 13, 14

*Great-W. Life & Annuity Ins. Co. v. Knudson*,
    534 U.S. 204 (2002) .............................................................................................. 11

*Jarmakani v. Bank of Am. Nat'l Assoc.*,
    2018 WL 6267341 (C.D. Cal. June 14, 2018) ..................................................... 14

*Korman v. ILWU-PMA Claims Office*,
    2019 WL 3033529 (C.D. Cal. July 3, 2019) ....................................................... 14

*Mertens v. Hewitt Assocs.*,
    508 U.S. 248 (1993) ................................................................................................ 5

*Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan*,
    577 U.S. 136 (2016) .................................................................................... 9, 10, 11

*Pane v. RCA Corp.*,
    868 F.2d 631 (3d Cir. 1989) ............................................................................... 7, 8

*Schonbak v. Minn. Life*,
    2016 WL 9525592 (S.D. Cal. Sept. 30, 2016) ................................................ 13, 14

*Schuman v. Microchip Tech. Inc.*,
    302 F. Supp. 3d 1101 (N.D. Cal. 2018) .............................................................. 13

*Sereboff v. Mid Atl. Med. Servs., Inc.*,
    547 U.S. 356 (2006) .............................................................................................. 11

*Spinelli v. Gaughan*,
    12 F.3d 853 (9th Cir. 1993) ................................................................................... 5

*Tamrazian v. UNUM Life Ins. Co. of Am.*,
    2020 WL 4288441 (C.D. Cal. Apr. 14, 2020) ..................................................... 14

*Teutscher v. Woodson*,
    835 F.3d 936 (9th Cir. 2016) ............................................................................... 12

*Wise v. Verizon Commc'ns, Inc.*,
    600 F.3d 1180 (9th Cir. 2010) ............................................................................. 13

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- iii -

MOTION TO DISMISS SECOND CAUSE OF ACTION OF
COMPLAINT
CASE NO. 3:24-cv-06266-JSC

1

**STATUTES**

29 U.S.C. § 1101(a)(1) ................................................................................................. 6, 7

29 U.S.C. § 1132 ................................................................................................................ 5

29 U.S.C. § 1132(a)(1)(B) ............................................................................................ 4, 13

29 U.S.C. § 1132(a)(3) ............................................................................................. passim

29 U.S.C. § 1132(a)(3)(B) .................................................................................................. 5

29 U.S.C. § 1140 ....................................................................................................... passim

**RULES**

Fed. R. Civ. P. 12(b)(6) .......................................................................... 2, 5, 6, 15

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

MOTION TO DISMISS SECOND CAUSE OF ACTION OF
COMPLAINT
CASE NO. 3:24-cv-06266-JSC

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.    INTRODUCTION**

3

Plaintiffs are three former Twitter executives who served in the roles of Chief Human

4

Resources Officer, Chief Customer Officer, and General Manager, Bluebird before Twitter was

5

purchased by entities associated with Elon Musk.  That purchase was memorialized in a merger

6

agreement inked on April 25, 2022.  The merger agreement contained a stand-still provision that,

7

among other things, prohibited increases in compensation to Twitter employees except as required

8

pursuant to existing company plans.  Despite that provision, and contrary to express instructions

9

from the acquiring entities, Plaintiffs approved millions of dollars in sweetheart retention and spot

10

bonuses shortly before the merger closing, in violation of the merger agreement.

11

Each of the Plaintiffs also executed an agreement to participate in the Twitter, Inc. Change

12

of Control and Involuntary Termination Protection Policy ("Plan"), which provided severance

13

benefits to a small, select group of highly compensated Twitter executives.  Plaintiffs signed these

14

participation agreements after the merger agreement was executed.

15

The Twitter merger consummated on October 27, 2022, after which Plaintiffs were

16

terminated for misconduct.  Plaintiffs subsequently submitted claims for severance benefits under

17

the Plan.  Their claims were decided by an independent administrator that was conferred full

18

discretion to interpret the Plan and decide claims for Plan benefits.  The Plan administrator denied

19

Plaintiffs' claims in detailed decisions, finding they were terminated "for Cause" under the Plan

20

and thus ineligible for severance benefits.  As is ordinary in benefit-denial cases, the central

21

question here is whether the administrative decision was reasonable as opposed to an abuse of

22

discretion.  That is what the Complaint's First Cause of Action concerns, and while it is the focus

23

of this litigation, it is not the subject of this Motion.

24

Instead, this Motion concerns the Second Cause of Action, which claims that Defendants

25

Musk and X Corp. terminated Plaintiffs' employment for the purpose of interfering with their

26

alleged right to severance benefits under the Plan in violation of ERISA section 510, 29 U.S.C. §

27

1140.  For this claim, Plaintiffs request a variety of purported equitable relief:  surcharge,

28

restitution, disgorgement, front pay, equitable lien by agreement, and estoppel.  But none of this is

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 1 -

MOTION TO DISMISS SECOND CAUSE OF ACTION OF
COMPLAINT
CASE NO. 3:24-cv-06266-JSC

"appropriate equitable relief" under ERISA, including for a reason this Court has not yet addressed, so the Second Cause of Action should be dismissed.

First, an equitable "surcharge" is available only to remedy breaches of fiduciary duty under ERISA. But the Plan here is a top hat plan applicable to only a select group of top executives, and is therefore exempt from ERISA's fiduciary provisions. This precludes any fiduciary-breach claim or any award of equitable surcharge based on a fiduciary breach.

Second, as this Court has held, Plaintiffs' requests for restitution, disgorgement, and an equitable lien by agreement require "specifically identifiable property." But no such "property" is alleged in the Complaint or otherwise present here. To the contrary, Plaintiffs seek to recover severance benefits, paid from the company's general assets, which would constitute ordinary *legal* relief—not the sort of equitable relief that is uniquely available under 29 U.S.C. § 1132(a)(3).

Third, as this Court previously concluded with respect to other executives, Plaintiffs' claim to "front pay" fails because Plaintiffs allegedly not only intended to resign but did resign after the Twitter merger closed. Such allegations foreclose any suggestion that Plaintiffs were *reasonably certain* to remain employed at Twitter for years into the future and after any judgment in this case but for their allegedly unlawful terminations. These are the requirements for an award of front pay—as opposed to back pay, which concerns periods prior to judgment—and Plaintiffs' own allegations confirm they cannot be satisfied here. And finally, the Complaint also fails to allege sufficient facts supporting the requisite elements of an equitable estoppel theory, including, among others, that the Plan was ambiguous.

For these reasons and as discussed further below, the Court should dismiss the Complaint's Second Cause of Action for failure to state a claim under Rule 12(b)(6).

## II.    RELEVANT BACKGROUND

### A.    The Plan

The Plan provided specifically defined severance benefits to a "select group of key Twitter" employees who were approved by Twitter's Compensation Committee and executed participation agreements, in the "event their employment is negatively affected by a change of control at Twitter." Dkt. 1-2 at ECF Page 2 of 11. This select group was narrowly limited to members of

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 2 -

MOTION TO DISMISS SECOND CAUSE OF ACTION OF
COMPLAINT
CASE NO. 3:24-cv-06266-JSC

Twitter's so-called "Staff," the highest class of executives at Twitter.  Compl. ¶¶ 23, 26.  Benefits paid pursuant to the Plan are "Deferred Payments" paid by the company directly, as opposed to a funded trust.  Dkt. 1-1 at ECF Pages 5 & 8 of 11 ("The cost of the [Plan] is paid by the Company."); Compl. ¶ 12 ("X Corp. is the Plan Sponsor and funding source of the Plan.").

Under the terms of the Plan, benefits were available to participants whose employment was "Involuntar[ily] Terminat[ed]" during a "Change of Control Period."  Dkt. 1-1 at ECF Page 2 of 11.  But participants were not eligible for benefits if their employment was terminated "for Cause." *Id*. at ECF Pages 2 & 5 of 11.  As relevant here, "Cause" includes "gross negligence or willful misconduct in the performance of [the employee's] duties[.]" *Id*. at ECF Page 3 of 11.

The Plan expressly provides that any designated "Administrator will have full discretion to administer and interpret the Plan," and that "[a]ny decision made or action taken by the Administrator with respect to the [Plan], and any interpretation by the Administrator of any term or condition of the [Plan], or any related document, will be conclusive and binding on all persons and be given the maximum possible deference allowed by law." *Id*. at ECF Page 6 of 11.  Thus, any decision by the Administrator is subject to abuse of discretion review in this Court.  *See, e.g.*, *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 967 (9th Cir. 2006) ("We read *Firestone* to require abuse of discretion review whenever an ERISA plan grants discretion to the plan administrator[.]").

**B.      Plaintiffs, Their Administrative Claims and Appeals, And The Complaint**

Plaintiffs are three former high-level Twitter executives, including the Chief Human Resources Officer (Brand), Chief Customer Officer (Personette), and General Manager, Bluebird (Sullivan).  Compl. ¶¶ 8-10.  On April 25, 2022, the merger agreement whereby Musk-related entities agreed to purchase Twitter was executed.  *Id.* ¶ 58.  Later, in May 2022, each Plaintiff signed an agreement to participate in the Plan.  Dkt. 1-1 at ECF Page 11 of 11; Dkt. 1-2 at ECF Page 11 of 11; Dkt. 1-3 at ECF Page 11 of 11.

The merger was consummated on October 27, 2022, and Plaintiffs allege that they submitted notice of their voluntary resignations for Good Reason on October 28, 2022.  Compl. ¶¶ 64, 67.  Plaintiffs were terminated for Cause on November 27, 2022.  *Id.* ¶¶ 84, 86.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 3 -

MOTION TO DISMISS SECOND CAUSE OF ACTION OF
COMPLAINT
CASE NO. 3:24-cv-06266-JSC

On December 16, 2022, Plaintiffs submitted, through counsel, formal claims for benefits under the Plan.  Compl. ¶ 90.  The designated Plan administrator, Lindsay Chapman ("Plan Administrator"), denied the claims in detailed letters dated June 15, 2023.  *Id*. ¶¶ 96-97.  The Plan Administrator concluded that Plaintiffs were terminated for "Cause," within the meaning of the Plan, based on gross negligence or willful misconduct, including improperly approving retention bonuses in violation of the merger agreement.  *Id*. ¶¶ 98, 100, 103.

On November 7, 2023, Plaintiffs submitted appeals, arguing that the Plan Administrator erred in concluding that they were terminated for Cause and that their resignation for Good Reason "was valid and effective" before their terminations.  *Id*. ¶ 108.  The appeals were reviewed by the Twitter Severance Administration Committee ("Committee").  *Id*. ¶¶ 109-11.  On March 6, 2024, the Committee issued detailed opinions addressing Plaintiffs' arguments and the evidence offered in support, denying each of the Plaintiffs' appeals.  *Id*. ¶¶ 110, 113-117.

Plaintiffs then filed the Complaint asserting the following claims:

***Claim for Benefits*.**  In the First Cause of Action, Plaintiffs assert a claim for severance benefits under the Plan pursuant to section 502(a)(1)(B) of ERISA.  Compl. ¶¶ 148-53.  Through this claim, Plaintiffs seek an order declaring that the denials of their claims for benefits under the Plan were contrary to the terms of the Plan, and further ordering that Plaintiffs be paid severance benefits in accordance with the terms of the Plan.  *Id.*, Prayer for Relief ¶¶ 1-2.

***Claim for Equitable Relief*.**  In the Second Cause of Action, Plaintiffs bring a claim under section 510 of ERISA, to recover from Musk and X Corp. "appropriate equitable relief" based on the decision to terminate their employment.  Compl. ¶¶ 155-67.

***Breach of Contract Claim*.**  In the Third Cause of Action, Plaintiffs allege that X Corp. breached various agreements by failing to pay Plaintiffs certain equity awards.  Compl. ¶¶ 169-73.

***Breach of the Implied Covenant of Good Faith and Fair Dealing*.**  In the Fourth Cause of Action, Plaintiffs allege that X Corp. breached an implied duty of good faith and fair dealing when failing to pay certain equity awards.  Compl. ¶¶ 175-79.

This Motion addresses only the Second Cause of Action, in which Plaintiffs allege that Musk and X Corp. terminated their employment "to interfere with their right to benefits" under the

1  Plan in violation of ERISA section 510.  Compl. ¶ 7.  Based on this theory, Plaintiffs seek purported

2  "equitable relief," including restitution, disgorgement, front pay, equitable surcharge, an equitable

3  lien by agreement, and estoppel.  *Id.* ¶ 167 & Prayer for Relief ¶ 4.

4  **III.    THE SECOND CAUSE OF ACTION SHOULD BE DISMISSED BECAUSE
        PLAINTIFFS' REQUESTED REMEDIES ARE NOT EQUITABLE OR**

5  **    AVAILABLE TO THEM**

6  **    A.    Legal Standard**

7       To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual

8  matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*,

9  556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  ERISA

10 section 510 makes it unlawful to terminate the employment of a plan participant for "the purpose

11 of interfering with the attainment of any right to which such participant may become entitled under

12 the plan[.]"  29 U.S.C. § 1140.  A terminated participant can seek "redress" for an alleged violation

13 of section 510 through the enforcement provision prescribed in section 502(a)(3) of ERISA, which

14 provides "appropriate equitable relief" to "redress such violations[.]"  29 U.S.C. § 1132(a)(3);

15 *Spinelli v. Gaughan*, 12 F.3d 853, 856 (9th Cir. 1993) ("[S]ection 510 incorporates the remedies of

16 section 502, which in turn authorizes an aggrieved participant . . . to bring a civil action . . . to

17 obtain . . . appropriate equitable relief[.]") (citation omitted).

18       Claims seeking "equitable relief" that is not properly awarded under ERISA section

19 502(a)(3) are properly dismissed under Rule 12(b)(6).  *See, e.g.*, *Depot, Inc. v. Caring for*

20 *Montanans, Inc.*, 915 F.3d 643, 665 (9th Cir. 2019) (affirming dismissal because the "plaintiffs

21 [were] not seeking 'appropriate equitable relief' under 29 U.S.C. § 1132(a)(3)").  An ERISA "claim

22 fails if the plaintiff cannot establish . . . that the remedy sought is 'appropriate equitable relief'

23 under [29 U.S.C.] § 1132(a)(3)(B), regardless of whether a remediable wrong has been alleged.'"

24 *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 954 (9th Cir. 2014) (quoting *Mertens v. Hewitt*

25 *Assocs.*, 508 U.S. 248, 254 (1993)).

26       Here, Plaintiffs seek the following forms of purported equitable relief: surcharge,

27 restitution, disgorgement, front pay, an equitable lien by agreement, and estoppel.  Compl. ¶ 167,

28 Prayer for Relief ¶ 4.  The Ninth Circuit has recognized that regardless of how a plaintiff

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 5 -    MOTION TO DISMISS SECOND CAUSE OF ACTION OF
COMPLAINT
CASE NO. 3:24-cv-06266-JSC

1   characterizes the requested relief, courts must "look to the substance of the remedy sought rather

2   than the label placed on that remedy." *Depot*, 915 F.3d at 661 (internal quotations and citation

3   omitted).  None of the requested forms of relief are available to Plaintiffs as a matter of law, and

4   the Second Cause of Action should be dismissed.  *See* Fed. R. Civ. P. 12(b)(6).

**1.    Surcharge Is Not Available Because The Plan Is Exempt From ERISA's Fiduciary Provisions**

7        Although "surcharge" is a form of equitable relief that may properly be awarded in certain

8   ERISA cases, this is not one of them.  An "equitable surcharge" is available only to remedy a breach

9   of fiduciary duty. *CIGNA Corp. v. Amara*, 563 U.S. 421, 442 (2011) (explaining that a "surcharge"

10   is monetary relief that might be "equitable" within the meaning of ERISA, but only when awarded

11   to remedy "a breach of trust committed by a fiduciary encompassing any violation of a duty

12   imposed upon that fiduciary"); *Gabriel*, 773 F.3d at 957-58 (same).  The Plan was a top hat plan

13   exempt from ERISA's fiduciary provisions, which precludes any fiduciary-breach claim or any

14   award of equitable surcharge based on a fiduciary breach, as a matter of law.

15        ERISA exempts a particular kind of plan commonly called a "top hat" plan from the

16   fiduciary requirements applicable to other employee benefit plans. *Duggan v. Hobbs*, 99 F.3d 307,

17   310 (9th Cir. 1996).  A top hat plan "is unfunded and is maintained by an employer primarily for

18   the purpose of providing deferred compensation for a select group of management or highly

19   compensated employees." 29 U.S.C. § 1101(a)(1).  Top hat plans are exempt from ERISA's

20   fiduciary provisions because such "plans only apply to highly paid executives who are in a strong

21   bargaining position relative to their employer and, therefore, are generally not in need of ERISA

22   protection." *Callan v. Merrill Lynch & Co*., 2010 WL 3452371, at *9 (S.D. Cal. Aug. 30, 2010);

23   *Colburn v. Hickory Springs Mfg. Co*., 448 F. Supp. 3d 512, 527 (E.D.N.C. 2020) ("Congress

24   intended to carve out the top hat exemption because 'high-echelon employees . . . are capable of

25   protecting their own pension interests.'").  If the Plan qualifies as a top hat plan, then Defendants

26   "cannot be held personally liable for [] breach" of ERISA's fiduciary duties and, by extension,

27   Plaintiffs have no entitlement to equitable surcharge. *Duggan*, 99 F.3d at 310.

28        Based on the Plan's terms, Plaintiffs' allegations, and documents properly subject to judicial

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 6 -

MOTION TO DISMISS SECOND CAUSE OF ACTION OF
COMPLAINT
CASE NO. 3:24-cv-06266-JSC

notice, it is clear that the Plan satisfies the statutory criteria of a top hat plan and is therefore exempt from ERISA's fiduciary requirements as a matter of law.  First, the Plan is not funded for tax purposes.  Any benefits paid pursuant to the Plan are paid by the company out of its general assets. Dkt. 1-1 at ECF Page 8 of 11 ("The cost of the [Plan] is paid by the Company.").  Plaintiffs themselves allege that "X Corp. is the . . . funding source of the Plan."  Compl. ¶ 12; *see Duggan*, 99 F.3d at 309 (holding severance plan was unfunded because "no funds were ever set aside" and the company "drew money from its general account to pay [the] benefits under the Agreement").

Second, the Plan explicitly states that it provides deferred compensation to certain select employees.  Dkt. 1-1 at ECF Page 5 of 11 (defining payment or benefits under the Plan, in conjunction with any other severance payments or separation benefits, as "Deferred Payments"). Indeed, severance benefits like those provided under the Plan are routinely considered deferred compensation "because they provide compensation for services substantially after the services were rendered."  *Duggan*, 99 F.3d at 311 (citing *Pane v. RCA Corp.*, 868 F.2d 631, 637 (3d Cir. 1989) for the proposition that "compensation due under a severance agreement is a form of deferred compensation for the purposes of section 1101(a)(1).").

Third, the Plan applied only to "a select group of management or highly compensated employees" because Plaintiffs and their fellow participants were richly compensated and among Twitters' highest-ranking executives.  *Duggan*, 99 F.3d at 312-13.  In evaluating this factor, courts typically assess the covered employees from both a quantitative and qualitative perspective.  *E.g.*, *Bond v. Marriott Int'l, Inc.*, 637 F. App'x 726, 729 (4th Cir. 2016) ("[I]n number, the plan must cover relatively few employees.  In character, the plan must cover only high level employees.") (quotation omitted); *Callan*, 2010 WL 3452371, at *10 (applying four factors examining "(1) the percentage of total workforce invited to join the plan; (2) the nature of the participants' employment duties; (3) the compensation disparity between top hat plan members and non-members; and (4) the actual language of the plan agreement.") (citing *Bakri v. Venture Mfg. Co.*, 473 F.3d 677, 680 (6th Cir. 2007)).

On its face, the Plan here covered only "a **select group** of key Twitter, Inc. . . . employees" who were approved by the Compensation Committee of Twitter's Board of Directors and who

executed participation agreements.  Dkt. 1-2 at ECF Page 2 of 11 (emphasis added).  This select group was composed of the highest class of executives at the company, including Chief Customer Officer (Personette) and Chief Human Resources Officer (Brand).  Compl. ¶¶ 8-10, 23, 35; *see also* Ex. 2 (Twitter 2022 Proxy Statement) at 73/89, 79/89 (identifying other Plan participants as Twitter's CEO (Agrawal), Chief Financial Officer (Segal), and Chief Legal Officer (Gadde)).  Indeed, the Complaint concedes that Plan participants were members of "Staff, which at Twitter referred to the class of executives who reported directly to Twitter's Chief Executive Officer." Compl. ¶ 23; *see also*, *e.g.*, Compl. ¶¶ 8-10 (each Plaintiff "reported to the CEO" of Twitter); Compl. ¶ 26 ("Ms. Personette's participation in the Plan was consistent with prior practice (i.e., that members of Staff were approved for participation)").  "As high-ranking employees, they had access to information concerning their rights and obligations, so they did not need the extra protections afforded by ERISA."  *Colburn*, 448 F. Supp. 3d at 527.

The Plan's participants also constituted only a tiny fraction of Twitter's workforce.  In the months leading up to the merger, there were no more than ten members of Staff—and thus ten participants in the Plan.  *See* Compl. ¶¶ 8-10; *Agrawal, et al. v. Musk, et al.*, Compl. ¶¶ 10-12, No. 3:24-cv-01304-MMC, Dkt. 1 (N.D. Cal. Mar. 4, 2024); *Caldwell v. Musk, et al.*, Compl. ¶¶ 20, 24, No. 3:24-cv-02022-MMC, Dkt. 1 (N.D. Cal. Apr. 3, 2024); *Berland v. Musk, et al.*, Compl. ¶¶ 15, 158, No. 3:24-cv-07589, Dkt. 1 (N.D. Cal. Nov. 1, 2024).  The number of Plan participants amounted to no more than 0.13% of Twitter's workforce of "over 7,500 full-time employees."  *See* Ex. 1 (Twitter 2022 Form 10-K) at 16/156.  This supports a finding that the Plan applied only to a "select group" as required under the statute.  *E.g.*, *Duggan*, 99 F.3d at 312 (holding severance agreement that applied to less than 5% of the workforce was a top hat plan); *Demery v. Extebank Deferred Comp. Plan (B)*, 216 F.3d 283, 289-90 (2d Cir. 2000) (holding that deferred compensation plan that was limited to just 15.34% of workforce constituted a top hat plan); *Pane*, 868 F.2d at 637 (holding that severance plan applicable to management employees who made up "less than one-tenth of one percent of that work force" was a top hat plan).

Plaintiffs and their fellow participants were also highly compensated, by any measure.  For example, in 2021 as Chief Customer Officer, Personette earned $16,233,642, nearly *seventy times*

the median amount earned by Twitter employees, which was $232,626.  Ex. 2 (Twitter May 25, 2022 Proxy Statement) at 73/89, 74/89 (cited at Compl. ¶¶ 129-132).  Other Plan participants earned even more.  *Id*. at 73/89 (identifying the total compensation in 2021 earned by three other Plan participants:  Agrawal earned $30,351,152, Segal earned $18,907,232, and Gadde earned $16,957,785).  Plan participant compensation easily exceeded the "highly compensated" threshold recognized by courts.  *E.g.*, *Colburn*, 448 F. Supp. 3d at 527 (plan participants whose "salaries were more than twice the average salary of the employees who did not participate" in the plan were highly compensated); *Callan*, 2010 WL 3452371, at *11 ("courts have found that a 2:1 disparity is sufficient to satisfy this prong of the test") (collecting cases).

In short, the Plan's terms, Plaintiffs' allegations, and judicially-noticeable documents leave no doubt that the Plan is a top hat plan exempt from ERISA's fiduciary provisions.  *See Collazo v. Infonet Servs. Corp.*, 2015 WL 13917163, at *5 (C.D. Cal. Apr. 8, 2015) ("[A]ccepting all of Plaintiffs' alleged facts as true, there is no dispute that the Retirement Plan meets the definition of a top hat ERISA plan."); *Duggan*, 99 F.3d at 310.  Plaintiffs' request for surcharge, which is available only for a breach of fiduciary duty, must be dismissed.

### 2. Plaintiffs' Claims for Restitution, Disgorgement, And An Equitable Lien Are Not Appropriate Equitable Relief

Despite Plaintiffs' label, "not all relief falling under the rubric of restitution is available in equity." *Gabriel*, 773 F.3d at 954 (citation omitted).  Restitution in equity is available only "where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id.* at 954-55; *see also Depot*, 915 F.3d at 663; *Caldwell v. Musk*, 2024 WL 4654272, at *3 (N.D. Cal. Nov. 1, 2024).  By contrast, restitution at law is where the plaintiff "cannot assert title or right to possession of particular property" and instead seeks to recover "money to pay for some benefit the defendant received from the plaintiff." *Depot*, 915 F.3d at 661 (citation omitted).  In other words, where, as here, a plaintiff seeks recovery out of the defendant's general assets, the plaintiff is seeking legal restitution—not *equitable* restitution. *Id.*; *Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan*, 577 U.S. 136, 145 (2016) (recovery from a defendant's general assets "is a legal remedy, not an

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 9 -

MOTION TO DISMISS SECOND CAUSE OF ACTION OF
COMPLAINT
CASE NO. 3:24-cv-06266-JSC

1  equitable one."); *Caldwell*, 2024 WL 4654272, at *4 n.3 ("[A]s Caldwell does not allege the value

2  of vested shares he seeks ever 'existed as a distinct object or fund,' a judgment awarding him the

3  value of the vested shares 'would have no connection to any particular fund,' i.e., it would be

4  'restitution at law, not equity'") (quoting *Depot*, 915 F.3d at 662).

5       In *Depot*, the Ninth Circuit affirmed dismissal of a claim relating to health insurance

6  premium surcharges because the plaintiffs' request for restitution was legal in nature.  915 F.3d at

7  662.  While the plaintiffs sought to recover amounts equal to the premium surcharges they had paid

8  on the theory that the surcharges constituted unreasonable compensation under ERISA, the

9  surcharges "never existed as a distinct object or fund" but rather reflected a "specific amount of

10 money encompassed within a particular fund."  *Id.* (citation omitted).  Consequently, the Ninth

11 Circuit held that the plaintiffs had failed to allege a specific, identifiable fund to which they were

12 entitled, as required for equitable restitution.  *Id.*

13      The same is true here, as this Court concluded in *Caldwell*.  The Complaint alleges that

14 Musk and X Corp. terminated Plaintiffs' employment "to interfere with their right to benefits" and

15 that they are seeking to recover "restitution."  Compl. ¶ 7, Prayer for Relief ¶ 4.  But, like the

16 complaint in *Caldwell*, the Complaint here does not allege that Plan benefits are "specifically

17 identifiable funds" in Musk's or X Corp.'s possession to which Plaintiffs are entitled.  *See Depot*,

18 915 F.3d at 661-62; *Caldwell*, 2024 WL 4654272, at *4; *see also Montanile*, 577 U.S. at 145

19 ("Equitable remedies are, as a general rule, directed against some specific thing; they give or

20 enforce a right to or over some particular thing ... rather than a right to recover a sum of money

21 generally out of the defendant's assets.") (internal quotations and citation omitted).  Indeed, the

22 Plan makes clear that severance benefits are paid from company assets.  Compl. ¶ 12 ("X Corp. is

23 the . . . funding source of the Plan."); Dkt. 1-1 at ECF Page 8 of 11 ("The cost of the [Plan] is paid

24 by the Company."); Dkt. 1-2 at ECF Pages 2 & 8 of 11; Dkt. 1-3 at ECF Pages 2 & 8 of 11;

25 *Caldwell*, 2024 WL 4654272, at *4.  Thus, as in *Depot* and *Caldwell*, were Plaintiffs to prevail on

26 their ERISA section 510 claim, any recovery of Plan benefits would necessarily be paid by X Corp.

27 from its general assets.  And because such recovery would constitute *legal* restitution, it is simply

28 not available under section 502(a)(3).  *Depot*, 915 F.3d at 662; *Caldwell*, 2024 WL 4654272, at *4.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 10 -

MOTION TO DISMISS SECOND CAUSE OF ACTION OF
COMPLAINT
CASE NO. 3:24-cv-06266-JSC

Plaintiffs' request for disgorgement fails for the same reason. Disgorgement is simply a form of restitution "measured by the defendant's wrongful gain rather than by the plaintiff's loss." *Depot*, 915 F.3d at 663 (internal quotations and citation omitted). But like restitution, equitable disgorgement is only "available when the plaintiff is entitled to a constructive trust on *particular property* held by the defendant that allows the plaintiff to recover profits produced by the defendant's use of *that property*." *Id.* (quoting *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214 n.2 (2002)) (internal quotations omitted; emphases added); *Caldwell*, 2024 WL 4654272, at *4 (disgorgement "requires a showing that the defendant possesses 'specific property from which proceeds or profits derived'") (quoting *Depot*, 915 F.3d at 664-65). Here again, the Complaint does not allege any "particular property" held by Musk or X Corp. "Given the absence of any particular property in this case, [Plaintiffs'] request for disgorgement is not equitable in nature," and should therefore be dismissed. *Depot*, 915 F.3d at 664; *see also Caldwell*, 2024 WL 4654272, at *4 (dismissing request for disgorgement where plaintiff did "not allege the vested shares he seeks to recover are held by X, or by Musk").

The same goes for Plaintiffs' attempt to impose an equitable lien by agreement. *See* Compl. ¶ 167. To recover on an equitable lien by agreement, Plaintiffs must specifically identify a particular fund "distinct from" the defendant's general assets that is in the defendant's possession and control. *Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083, 1092-93 (9th Cir. 2012) (citing *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 363 (2006)) (holding that claim administrator failed to satisfy requirements for an equitable lien by agreement); *see also Montanile*, 577 U.S. at 147 (an equitable lien by agreement still requires a plaintiff to "identify a specific fund in the defendant's possession to enforce the lien"). The Complaint alleges no such thing, nor could it, as Plan benefits are paid from the company's general assets. *Caldwell*, 2024 WL 4654272, at *4. Because Plaintiffs seek an "undifferentiated component of a larger fund" that "never existed as a distinct object or fund[,]" they cannot secure an equitable lien by agreement. *Bilyeu*, 683 F.3d at 1093-94 (rejecting argument that claims administrator's request for an equitable lien by agreement because administrator sought a judgment requiring payment out of the defendant's general assets, which constituted "legal, rather than equitable, relief"); *Montanile*, 577

U.S. at 148-49 (rejecting argument that defendant could enforce an equitable lien against the defendants' general assets).

### 3. The Complaint's Allegations Demonstrate That Plaintiffs Cannot Recover Front Pay

Plaintiffs' request for front pay likewise falls short. Even assuming that front pay may constitute "appropriate equitable relief" under section 502(a)(3) in certain cases, Plaintiffs' own allegations confirm this is not one of them. Front pay is a forward-looking remedy, measured by the amount the plaintiff was "reasonably certain" to earn through continued employment with the employer beyond the trial date, "but for his wrongful discharge" (minus earnings he could have obtained through alternative employment). *Teutscher v. Woodson*, 835 F.3d 936, 948 (9th Cir. 2016).[1] "To establish entitlement to front pay, a plaintiff must show 'the salary [he] was reasonably certain to have earned but for his wrongful discharge [and] the period over which he would have earned that salary.'" *Caldwell*, 2024 WL 4654272, at *4 (quoting *Teutscher*, 835 F.3d at 948).

But here, Plaintiffs allege they had *no expectation* of remaining employed at Twitter—let alone for years into the future and beyond any trial in this case. Instead, Plaintiffs allege they submitted notice of resignation on October 28, 2022 and their resignations became effective on November 27, 2022. Compl. ¶¶ 66-67, 85, 169. Thus, Plaintiffs' own allegations refute any suggestion that they could be entitled to front pay for their section 510 claim. *Caldwell*, 2024 WL 4654272, at *4 (concluding plaintiff failed to plead entitlement to front pay because he did not allege "that had he not been terminated by Musk, he would have continued to work for X for any significant period of time thereafter, . . . a threshold showing he must make."); *Agrawal v. Musk*, 2024 WL 4654442, at *4 (N.D. Cal. Nov. 1, 2024) (same).

### 4. The Complaint Fails To Adequately Plead The Elements Of Equitable Estoppel

The Complaint requests that Musk and X Corp. "be estopped from denying that Plaintiffs

---

[1] Front pay is distinct from backpay, which covers periods before the entry of judgment. *See Teutscher*, 835 F.3d at 946; *Caldwell*, 2024 WL 4654272, at *4 n.4. Plaintiffs, appropriately, do not seek to recover backpay.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  were employed and entitled to salary and equity vesting" and "entitled to Plan benefits."  Compl. ¶

2  167.  At the outset, it is not clear that equitable estoppel is properly invoked in connection with an

3  ERISA § 510 claim.  Defendants have not located any cases in this Circuit recognizing or awarding

4  equitable estoppel in that context.  Even if it were theoretically possible, the Complaint fails to

5  sufficiently allege the elements of equitable estoppel.

6       Typically, when a plaintiff asserts equitable estoppel in an ERISA case, it is based on

7  misrepresentations made by an employer regarding benefits that conflict with the actual plan terms.

8  *See, e.g.*, *Greany v. W. Farm Bureau Life Ins. Co.*, 973 F.2d 812, 822 (9th Cir. 1992) ("A plaintiff

9  cannot avail himself of a federal ERISA estoppel claim based upon statements of a plan employee

10  which would enlarge his rights against the plan beyond what he could recover under the

11  unambiguous language of the plan itself."); *Schonbak v. Minn. Life*, 2016 WL 9525592, at *5 (S.D.

12  Cal. Sept. 30, 2016) (requesting that the court "estop[ ] Tribune from denying benefits owed

13  Plaintiff based on their multiple misrepresentations of coverage relied upon by Schonbak to his

14  detriment").[2]  Plaintiffs here do not contend that Defendants made any misrepresentation about

15  Plan benefits.

16       Nor have they alleged any facts supporting the elements of estoppel.  As the party asserting

17  entitlement to equitable estoppel, Plaintiffs must meet both traditional equitable estoppel

18  requirements and additional requirements unique to ERISA.  *Gabriel*, 773 F.3d at 955.  As to the

19  former, they must allege that:  "(1) the party to be estopped must know the facts; (2) he must intend

20  that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to

21  believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the

22  former's conduct to his injury."  *Id*.  As to the latter, Plaintiffs must also allege:  "(1) extraordinary

---

[2] To the extent Plaintiffs request the Court estop Defendants "from denying that Plaintiffs . . . are entitled to Plan benefits," Comp. ¶ 167, this simply duplicates the relief sought through Plaintiffs' section 502(a)(1)(B) claims for Plan benefits, which compels dismissal. *See, e.g., Wise v. Verizon Commc'ns, Inc.*, 600 F.3d 1180, 1190 (9th Cir. 2010) (affirming dismissal of Section 502(a)(3) claim for equitable relief as duplicative of claim for benefits); *Schuman v. Microchip Tech. Inc.*, 302 F. Supp. 3d 1101, 1118 (N.D. Cal. 2018) (dismissing three forms of injunctive relief under Section 502(a)(3) because they were "improperly duplicative" of relief available under Section 502(a)(1)(B)).

1  circumstances; (2) that the provisions of the plan at issue were ambiguous such that reasonable

2  persons could disagree as to their meaning or effect; and (3) that the representations made about

3  the plan were an interpretation of the plan, not an amendment or modification of the plan." *Id.* at

4  957.

5         The Complaint is devoid of alleged facts supporting any of these elements.  In particular,

6  there are no allegations of an ambiguous Plan provision or of any representation made interpreting

7  an ambiguous Plan provision.  *See Greany*, 973 F.2d at 822 n.9 ("A plaintiff must first establish

8  that the plan provision in question is ambiguous and the party to be estopped interpreted this

9  ambiguity."); *Jarmakani v. Bank of Am. Nat'l Assoc.*, 2018 WL 6267341, at *5 ("equitable estoppel

10  in the ERISA context requires that the plaintiff specifically identify a plan provision that is

11  ambiguous on which the interpretation at issue is based"); *Schonbak*, 2016 WL 9525592, at *6

12  (finding that plaintiff failed to allege sufficient facts for equitable estoppel, in part because she "has

13  not alleged any ambiguity in the Plan").  Nor are there any plausible allegations of a statement

14  intended to induce Plaintiffs' detrimental reliance.  All Plaintiffs allege is that they were told the

15  Company was "preparing separation agreements. . . in which they would be provided with their

16  severance benefits under the Plan."  Compl. ¶ 79.  But, at most, that statement constitutes an

17  acknowledgement that they were participants in the Plan, not any final determination by the

18  company that they were eligible for benefits pursuant to the terms of the Plan.  *See Korman v.

19  ILWU-PMA Claims Office*, 2019 WL 3033529, at *4 (C.D. Cal. July 3, 2019) (a "directive to pay"

20  in a pre-authorization letter was at most an "acknowledgement" of the individual's participation in

21  the plan, not a guarantee of benefits, and "[s]uch a promise is not sufficiently definite to induce

22  reasonable reliance").  In short, Plaintiffs have not pled sufficient facts supporting a plausible theory

23  of equitable estoppel.  *E.g.*, *Tamrazian v. UNUM Life Ins. Co. of Am.*, 2020 WL 4288441, at *4

24  (C.D. Cal. Apr. 14, 2020); *Schonbak*, 2016 WL 9525592, at *6.

25         The Court should dismiss the Second Cause of Action because it fails to adequately plead

26  any "appropriate" equitable relief that is available to Plaintiffs here.

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 14 -                    MOTION TO DISMISS SECOND CAUSE OF ACTION OF
COMPLAINT
CASE NO. 3:24-cv-06266-JSC

1

**IV.    CONCLUSION**

2          The Court should dismiss Plaintiffs' claim brought pursuant to 29 U.S.C. §§ 1132(a)(3) and

3   1140, the Complaint's Second Cause of Action, pursuant to Rule 12(b)(6).

4

5   Dated: November 15, 2024                    Respectfully submitted,

6

7                                              MORGAN, LEWIS & BOCKIUS LLP

8                                              By   */s/ Christopher Boran*
                                                    Eric Meckley
9                                                   Jeremy Blumenfeld (admitted *pro hac vice*)
                                                    Christopher Boran (admitted *pro hac vice*)
10                                                  Abbey Glenn
                                                    Brian Sullivan (admitted *pro hac vice*)
11
                                               *Attorneys for Defendants*
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO                              - 15 -    MOTION TO DISMISS SECOND CAUSE OF ACTION OF
                                                              COMPLAINT
                                                       CASE NO. 3:24-cv-06266-JSC