Teresa S. Renaker, Cal. Bar. No. 187800
teresa@renakerscott.com
Kirsten G. Scott, Cal. Bar. No. 253464
kirsten@renakerscott.com
RENAKER SCOTT LLP
505 Montgomery Street, Suite 1125
San Francisco, California 94111
Telephone: (415) 653-1733
Facsimile: (415) 761-3953

Wendy Stryker *(pro hac vice)*
wstryker@fkks.com
Kristen Niven *(pro hac vice)*
kniven@fkks.com
FRANKFURT KURNIT KLEIN + SELZ PC
28 Liberty Street, 35th Floor
New York, NY 10005
Telephone: (212) 980-0120
Facsimile: (212) 593-9175

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SARAH PERSONETTE, JAMES SULLIVAN, and DALANA BRAND,<br><br>Plaintiffs,<br><br>v.<br><br>ELON MUSK; X CORP., f/k/a TWITTER, INC.; TWITTER, INC. CHANGE OF CONTROL AND INVOLUNTARY TERMINATION PROTECTION POLICY; and DOES 1-20, inclusive,<br><br>Defendants. | Case No. 24-cv-06266-JSC<br><br>**JOINT CASE MANAGEMENT CONFERENCE STATEMENT & [PROPOSED] ORDER**<br><br>Date: December 5, 2024<br>Time: 1:30 p.m.<br>Place: Courtroom 8<br>Judge: Hon. Jacqueline Scott Corley<br><br>Complaint Filed: September 5, 2024<br>Trial Date: None Set |

Pursuant to the Court's October 30, 2024 Case Management Conference Order, the Parties hereby submit this Joint Case Management Conference statement.

### 1. Jurisdiction and Service

Plaintiffs' claims arise under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 ("ERISA") and California state law. This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to ERISA § 502(e) and (f), 29 U.S.C. § 1332(e) and (f), and 28 U.S.C. § 1331. Additionally, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs. All Defendants have been served (or waived service) and have appeared in the action.

### 2. Facts

#### a. Plaintiffs' Brief Chronology of Facts

This case arises from Defendants' bad faith misuse of the ERISA process to deprive Plaintiffs of millions of dollars each in severance benefits upon their resignation for Good Reason from Defendant X Corp., formerly known as Twitter, Inc. ("Twitter").

Plaintiffs were each participants in the Twitter, Inc. Change of Control and Involuntary Termination Protection Policy dated August 8, 2014 through their respective Participation Agreements (the "Plan") when Defendant Elon Musk purportedly terminated them on November 27, 2022.

At the time of her departure from Twitter, Plaintiff Sarah Personette served as Twitter's Chief Customer Officer, for which her responsibilities included managing client relationships and revenue growth. Plaintiff James Sullivan was Twitter's General Manager, Bluebird, responsible for leading the design and engineering of Twitter's consumer-facing product. Plaintiff Dalana Brand was Twitter's Chief Human Resources Officer and Head of Inclusion and Diversity. In these positions, Plaintiffs each reported to the CEO of Twitter. None of the Plaintiffs had received any material negative feedback or were advised that they had engaged in negligence or misconduct in the course of their employment at Twitter. On the contrary, they were recognized for their performance and received additional compensation and promotions.

A Change of Control Period as defined by the Plan commenced on October 27, 2022, when Mr. Musk and his companies closed on their acquisition of Twitter and took it private. This constituted a "material adverse change" to the Plaintiffs' positions, because they no longer reported to the CEO or Board of a publicly traded company, and was thus "Good Reason" for Plaintiffs to terminate their employment with Twitter. On October 28, 2022 Plaintiffs each tendered their resignations for "Good Reason" under the Plan in writing. This triggered a 30-day notice period, though the material adverse change to their positions could not be cured since Twitter was now privately held. Nevertheless, pursuant to the Plan terms, Plaintiffs were required, and offered, to remain employed for the notice period in order to smooth the transition of their responsibilities and ensure the company continued to operate well.

On October 29, 2022, Mr. Musk sent letters to Ms. Personette and Ms. Brand requesting documents and asking to schedule an interview in connection with a pending internal investigation into various matters, with which they each agreed to cooperate. On October 31, however, Twitter abruptly shut each of the Plaintiffs out of the office and all systems, access to which was necessary for their full participation in the purported internal investigation and/or the transition. Yet on November 2, 2022, Twitter confirmed via emails that each Plaintiff remained a Twitter employee until November 27, 2022.

In spite of this email and the purported expectation that Plaintiffs cooperate with transitioning their duties or in any investigations, Twitter treated each Plaintiff as a discharged employee. From October 31, 2022 on, Plaintiffs remained locked out of the Twitter office and accounts, and Twitter failed to pay their salary or benefits, and failed to pay their November 1, 2022 equity vest under the applicable agreements. On November 17, 2022, Twitter requested for the first time Mr. Sullivan's participation in an interview to assist with an internal investigation and also requested a forensic collection of each of the Plaintiffs' cellular phones. In discussions through counsel, Twitter assured Plaintiffs on November 19 that it would provide them with their severance agreements once Twitter had completed its interviews and phone collections and offered interview times after the Thanksgiving holiday, and Plaintiffs offered to make themselves available after the holiday.

Despite the many assurances that Plaintiffs were not accused of any wrongdoing and that they could participate in an interview the following week, late on the evening of Sunday, November 27, 2022, the last day of the notice-and-cure period, Twitter sent each Plaintiff a notice signed by Mr. Musk purporting to terminate them for "Cause." The termination notices recited three definitions under the Plan: "failure to comply with the Company's written policies or rules", "gross negligence or willful misconduct in the performance of your duties", and "failure to cooperate in good faith with a governmental or internal investigation of the Company." They described no specific conduct by Plaintiffs constituting or evidence supporting Cause. Twitter made no further efforts to follow up with any of the Plaintiffs regarding their participation in the investigation.

Plaintiffs each submitted a Claim on December 16, 2022, demanding all compensation and benefits owed to them under the Plan, including but not limited to vesting of 50% of their unvested RSUs, cash severance of 12 months of their most recent base salaries, and 12 months of COBRA benefits. The Claims articulated the grounds for the award of benefits under the Plan, denied any Cause for their termination, reiterated their demand for the promised severance agreement and release, and demanded Plan documents, their personnel files, payroll records, and any document evidencing the basis for their purported "Cause" termination.

On April 11, 2023, Lindsay Chapman, who identified herself as the acting Plan administrator, made a partial production of the requested documents. On June 14, 2023, Ms. Chapman sent letters denying the Plaintiffs' claims, purportedly upon determining that Twitter had grounds to terminate Plaintiffs for Cause. The Denials alleged that Twitter did not cease to be a publicly traded company until it was de-listed from the NYSE and that Plaintiffs' failure to participate in the investigation or produce their personal phones for forensic collection constituted Cause. The Denial also asserted a number of bases for purported gross negligence or misconduct that Twitter was later forced to abandon as unfounded, eventually reducing the purported grounds to an allegation that Plaintiffs wrongfully issued retention bonuses to key employees that constituted "corporate waste." However, all of the retention bonuses approved by Plaintiffs were consistent with company budgets, were made in the ordinary course of business to retain key

1  employees, and were approved by the Board. None of the documents ever produced by Twitter
2  supported the asserted Cause for Plaintiffs' terminations.
3    Plaintiffs timely appealed their claims Denials on November 7, 2023 with evidence
4  refuting each of Twitter's purported bases for denying Plaintiffs' Claims and renewing their
5  requests for relevant documents. The Appeals established that the retention bonuses were
6  authorized and issued in the ordinary course of business, refuted Twitter's incorrect interpretation
7  of the Plan, the Merger Agreement, and related documents, and established that Plaintiffs had
8  timely resigned for Good Reason.
9    On March 6, 2023, the purported Twitter Severance Administration Committee, comprised
10 of current or former employees of Mr. Musk's other companies, denied Plaintiffs' Appeals. The
11 Appeals Denials further confirmed the Committee's bias and conflicts of interest.
12   The Appeals Denials echoed many of the unfounded claims in the previous denials of
13 Plaintiffs' claims, dropped some of the baseless assertions, and included new grounds that had
14 never been previously raised and to which Plaintiffs were not provided an opportunity to respond
15 or submit rebutting evidence. The record demonstrated Plaintiffs were willing to participate in a
16 reasonable investigation and were in discussions with Twitter about how to facilitate a reasonable
17 forensic collection of relevant data from their personal phones, and were relying on Twitter's own
18 assurances that they would be provided their severance agreements and releases upon attending an
19 interview to be scheduled the week after Thanksgiving, 2022. However, the purported Committee
20 wrongly determined that each of the Plaintiffs were conditioning their cooperation on a receipt of
21 benefits. It further repeated the assertion that Plaintiffs' approval of retention bonuses in the
22 ordinary course of business was gross negligence or willful misconduct, yet providing no
23 supporting evidence. The purported Committee made new assertions that Plaintiffs' delay in
24 providing their phones also violated Twitter confidentiality agreements and privacy policies,
25 baselessly assuming that Plaintiffs must have been conducting Twitter business on unauthorized
26 applications. The purported Committee also added arguments with respect to Ms. Brand and Mr.
27 Sullivan that they engaged in misconduct by signing an agreement to participate in the Plan in the
28 first place, although such participation was routinely offered to employees who previously held

the same positions and were approved in the ordinary course of business.

### b.    Defendants' Brief Chronology of Facts

On November 27, 2022, Plaintiffs, three former Twitter executives who served in the roles of Chief Human Resources Officer (Brand), Chief Customer Officer (Personette), and General Manager, Bluebird (Sullivan), were terminated for cause.  Plaintiffs recklessly disregarded their duties to the company and engaged in "gross negligence" or "willful misconduct" within the meaning of the Plan by, among other things:

- Facilitating the payment of retention bonuses and spot bonuses outside the ordinary course of business, including for members of their own teams and personally approving hundreds of thousands of dollars in bonuses to be paid during the week leading up to the closing of the Twitter acquisition, in contravention to the buyer's stated objection to any expansion of the retention bonus program.
- Failing to participate in an internal investigation and refusing to allow the company to collect certain data from cell phones that were used to conduct company business, in breach of company policies.

After their terminations for cause, Plaintiffs submitted claims for benefits under the Plan. However, severance benefits are not owed to former executives who have been terminated for cause under the Plan's express terms.  Availing themselves of the Plan's procedures for making claims under the Plan, Plaintiffs submitted their original claims for benefits with the help of experienced legal counsel.

Plaintiffs' claims were decided by a neutral and unconflicted Plan Administrator.  The Plan Administrator has broad discretionary authority to interpret the Plan and decide claims for benefits under the Plan.  *See* Compl., Ex. A at ECF page 6; Compl., Ex. B at ECF page 6; Compl., Ex. C at ECF page 6 ("The Administrator will have full discretion to administer and interpret the [Plan]. Any decision made or action taken by the Administrator with respect to the [Plan], and any interpretation by the Administrator of any term or condition of the [Plan], or any related document, will be conclusive and binding on all persons and be given the maximum possible deference allowed by the law.").

5                              Case No. 24-cv-06266-JSC
JOINT CASE MANAGEMENT CONFERENCE STATEMENT

1   The Plan Administrator carefully considered Plaintiffs' claims before issuing a decision
2   thoroughly explaining the reasons for denying the claims.  The Plan Administrator concluded that
3   Plaintiffs engaged in gross negligence and willful misconduct by personally requesting and
4   approving millions of dollars in retention bonuses for members of their teams, including
5   approving more than $2.1 million (Sullivan), $670,000 (Brand), and $355,000 (Personette) in
6   compensation during the week preceding the closing.  These increased compensation payments
7   were not consistent with past practice, in violation of the merger agreement.  The Plan
8   Administrator also found that Plaintiffs contributed to corporate waste.

9   Plaintiffs requested and received relevant documents, and subsequently submitted an
10  appeal—again, through counsel—attaching various evidence and other materials.  Their appeals
11  were considered and denied by a duly-appointed Committee that reviewed and considered
12  Plaintiffs' appeals and other submissions, rendering a detailed opinion that thoroughly addressed
13  Plaintiffs' various arguments and the evidence they offered in support.  In the end, the Committee
14  agreed with the Plan Administrator that Plaintiffs were terminated for cause.  The Committee
15  found that Plaintiffs engaged in gross negligence and willful misconduct by personally requesting
16  and approving millions of dollars in retention bonuses for members of their teams, including some
17  bonuses during the very week leading up to the merger's closing.  Staff, including Plaintiffs, knew
18  the merger agreement required Musk's consent to any increased retention bonus program and that
19  Musk refused consent.  Despite this, Staff members, including Plaintiffs, took matters into their
20  own hands and dramatically increased the retention bonuses they were providing to members of
21  their respective teams.  On the other hand, the Committee disagreed with the Plan Administrator
22  that Plaintiffs contributed to corporate waste, finding Plaintiffs' roles inconclusive.  This
23  demonstrates that the Committee engaged in an independent assessment and did not merely
24  rubber-stamp the Plan Administrator's conclusions.

25  At bottom, Plaintiffs disagree with the Plan Administrator's and Committee's conclusions.
26  But they cannot dispute that the Plan expressly conferred discretionary authority on the Plan
27  Administrator and Committee to interpret the Plan and decide claims for benefits under the Plan.
28  As a result, that determination can be overturned only for an abuse of discretion.  *See Abatie v.*

*Alta Health & Life Ins. Co.*, 458 F.3d 955 (9th Cir. 2006).  Plaintiff cannot establish any abuse of discretion by the Plan Administrator or Committee. Accordingly, Plaintiffs' ERISA § 502(a)(1)(B) claims fail because Plaintiffs were terminated for cause and were ultimately determined to be ineligible for severance benefits based upon an independent assessment by the Plan Administrator and Committee.

As for Plaintiffs' ERISA § 510 claim, it fails for the reasons identified in Defendants' motion to dismiss.  Plaintiffs were terminated for cause and were ultimately determined to be ineligible for severance benefits based upon an independent assessment by the Plan Administrator and Committee.  Yet this was merely a byproduct of the termination decision (as it is whenever any employee is terminated for cause and the employer has a severance plan)—not its motivating purpose.

### 3.      Legal Issues

The parties dispute the following legal issues: (1) which standard of review the Court should apply in resolving Plaintiffs' claims for benefits; (2) if the Court applies abuse of discretion review, whether the purported administrators acted under a financial conflict of interest, and if so, what level of skepticism the Court should apply in reviewing their decisions;  (3) whether the Plan is an ERISA Top Hat Plan; (4) the scope of the administrative record and materials the Court should consider in resolving the benefits claims; (5) whether Plaintiffs are entitled to benefits under ERISA § 502(a)(1)(B); (6) whether Defendants interfered with Plaintiffs' protected rights in violation of ERISA § 510; and (7) whether Defendants breached the Twitter, Inc. 2013 Equity Incentive Plan Restricted Stock Unit Agreements by allegedly failing to pay Plaintiffs' quarterly vests on November 1, 2022, including $1,634,726.20 to Personette, $738,436.60 to Brand, and $450,076.80 to Sullivan.

### 4.      Motions

The parties are in the process of briefing Defendants' Rule 12(b)(6) motion to dismiss Plaintiffs' second cause of action for interference with Plaintiffs' protected rights in violation of ERISA § 510, part of which will address the issue of whether the Plan is an ERISA Top Hat Plan. Plaintiffs anticipate filing a motion for partial summary judgment as to the standard of review of

the benefits claims. The Parties anticipate filing cross motions under Rule 52 or Rule 56 as to the benefits claim, according to the Court's preference, and cross-motions under Rule 56 as to the other claims. Discovery motions are also possible. Should the parties dispute the propriety or scope of discovery, counsel will meet and confer in good faith. If counsel are unable to reach agreement in such a dispute, a discovery motion will be necessary.

### 5. Amendment of Pleadings.

The Parties do not currently anticipate amending the pleadings but reserve their respective rights to do so and believe they will be better positioned to evaluate this after initial discovery. Plaintiffs request March 14, 2025 as a deadline to amend the complaint.

### 6. Evidence Preservation

The Parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Evidence and will continue to meet and confer regarding the reasonable and proportionate steps to preserve evidence relevant to this action. Defendants have been notified and will instruct their agents to preserve documents relevant to Plaintiffs' claims. Defendants have been notified to preserve potentially relevant documents and relevant third parties have been notified of the litigation. Plaintiffs have also been notified to preserve documents relevant to the claims and defenses.

### 7. Disclosures

The Parties have agreed to exchange initial disclosures under Federal Rule of Civil Procedure 26(a)(1) on or before December 19, 2024.

### 8. Discovery

Plaintiffs' position is that fact discovery should proceed regarding the following issues, notwithstanding the pending motion to dismiss: (i) the standard of review; (ii) the alleged conflict of interest and bias permeating the ERISA claims process; (iii) the additional documents requested but not produced relating to the denial of Plaintiffs' claims for benefits; and (iv) regarding the completeness of the administrative record; and as to their ERISA § 510 and state law claims.

Defendants' position is that discovery should be limited to: (1) the administrative record; (2) discovery relating to the Plan Administrator's and Committee's alleged conflict of interest in

adjudicating Plaintiffs' claims for benefits, and (3) discovery relating to Plaintiffs' claims for breach of contract and breach of the duty of good faith and fair dealing involving the alleged breach of the equity agreement.  Discovery concerning Defendants' alleged bias or pretext in connection with the decision to terminate Plaintiffs is relevant only to Plaintiffs' ERISA section 510 claim and may be obviated entirely by the Court's ruling on Defendants' pending motion to dismiss that claim.

Defendants propose that all discovery be stayed pending the Court's ruling on Defendants' motion to dismiss, which will clarify what claims remain at issue in the case and the scope of discovery.

### 9. Class Actions

Not applicable.

### 10. Related Cases

*Berland v. X Corp. et al.*, 24-CV-07589-JSC is a "related" case within the meaning of Local Civil Rule 3-12(a).

### 11. Relief

Plaintiff Sarah Personette seeks severance benefits under the terms of the Plan in the amount of approximately $17,605,325.30, $50,000 in unpaid salary owed, plus $1,634,726.20 in equity that vested November 1, 2022, with the precise amount to be proven at trial.  Plaintiff James Sullivan seeks severance benefits under the terms of the Plan in the amount of approximately $21,785,500.30, $50,000 in unpaid salary owed, plus $450,076.80 in equity that vested November 1, 2022, with the precise amount to be proven at trial.  Plaintiff Dalana Brand seeks severance benefits under the terms of the Plan in the amount of approximately $13,964,359.00, $50,000 in unpaid salary owed, plus $738,436.60 in equity that vested November 1, 2022, with the precise amount to be proven at trial. Plaintiffs also seek attorneys' fees, costs, and pre- and post-judgment interest which will continue to accrue until the case is resolved and any judgment is satisfied.

Defendants reserve their right to recover attorneys' fees in costs in the event they prevail on Plaintiffs' claims in this action, and further reserve their rights to seek relief with respect to any

claims or counter-claims they may later assert in this action.

**12.     Settlement and ADR**

On November 26, 2024, counsel for the Parties met and conferred about ADR. Plaintiffs are amendable to a court-appointed mediation, private mediation or a settlement conference before a magistrate judge or other judicial officer pursuant to ADR Local Rule 7. Defendants are amenable to engaging in private mediation or a settlement conference before a magistrate judge or other judicial officer at the appropriate time.

**13.     Other References**

The Parties do not believe that the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**14.     Narrowing of Issues**

The Parties have not identified any stipulations or other means to narrow the issues before the Court, other than as discussed in paragraph 4, above. As the case progresses, counsel will continue to meet and confer regarding ways to streamline the case.

**15.     Expedited Trial Procedures**

The Parties do not believe that this case is appropriate for the Expedited Trial Procedures of General Order 65 Attachment A.

**16.     Scheduling**

The Plaintiffs propose the following schedule:

- Fact discovery cut-off: August 15, 2025
- Last day for Plaintiffs' motion as to the standard of review: Sept. 15, 2025
- Expert designations (if any): September 15, 2025
- Expert discovery cutoff (if any): November 21, 2025
- Briefing Relating to Rule 52 or Rule 56 motions
  - Plaintiff's Motion due April 6, 2026
  - Defendants' Opposition/Cross-Motion for Judgment due May 8, 2026
  - Plaintiff's Reply/Opposition due June 12, 2026

- Defendants' Reply due July 15, 2026

The Defendants propose the following schedule:

- Fact discovery cut-off: September 12, 2025
- Expert designations (if any): October 17, 2025
- Expert discovery cutoff (if any ): January 16, 2026
- Briefing Relating to Rule 52 and Rule 56 motions
  - Plaintiffs' Motion due June 5, 2026
  - Defendants' Opposition/Cross-Motion for Judgment due July 10, 2026
  - Plaintiffs' Reply/Opposition due August 14, 2026
  - Defendants' Reply due September 18, 2026
  - Hearing: October 15, 2026

**17. Trial**

Plaintiffs believe that any claims asserted in the Complaint that are not resolved through Rule 52 or Rule 56 motions will be tried to the Court. Plaintiffs estimate that the trial would take approximately five court days.

Defendants believe that most if not all of this case should be adjudicated through Rule 52 motions and that a separate bench trial will be unnecessary. If the case does proceed to trial in any respect, Defendants estimate the trial would take up to five court days.

**18. Disclosure of Non-Party Interested Entities or Persons**

Plaintiffs filed their Certifications of Conflicts and Interested Entities or Persons on September 19, 2024, stating that there is no conflict or interest other than the named parties to report.

Defendants filed their Rule 7.1 Corporate Disclosure Statement and Civil L.R. 3-15 Certification of Conflicts and Interested Entities or Persons on October 24, 2024, stating that Defendant X Corp. is wholly owned by X Holdings Corp. and that there is no conflict or interest (other than the named parties) to report.

19. **Professional Conduct**

All attorneys of record for the Parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

DATED: November 27, 2024

Respectfully submitted,
RENAKER SCOTT LLP

By: */s/ Teresa S. Renaker*
Teresa S. Renaker

FRANKFURT KURNIT KLEIN + SELZ PC
Wendy Stryker (*pro hac vice pending*)
Kristen Niven (*pro hac vice pending*)
*Attorneys for Plaintiffs*

DATED: November 27, 2024

Respectfully submitted,
MORGAN, LEWIS & BOCKIUS LLP

By: */s/ Abbey M. Glenn*
Abbey M. Glenn

*Attorneys for Defendants Elon Musk; X Corp.; Twitter, Inc. Change of Control and Involuntary Termination Protection Policy*

**ATTESTATION**

Pursuant to Local Rule 5-1(i)(3), I attest that each of the other signatories to this document has concurred in the filing of the document.

DATED: November 27, 2024

By: */s/ Teresa S. Renaker*
Teresa S. Renaker