MORGAN, LEWIS & BOCKIUS LLP
Eric Meckley (Bar No. 168181)
eric.meckley@morganlewis.com
Dylan Rudolph (Bar No. 278707)
dylan.rudolph@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Tel: +1.415.442.1000

Jeremy P. Blumenfeld (admitted *pro hac vice*)
jeremy.blumenfeld@morganlewis.com
Brian W. Sullivan (admitted *pro hac vice*)
brian.sullivan@morganlewis.com
2222 Market Street
Philadelphia, PA 19103-3007
Tel: +1.215.963.5000

MORGAN, LEWIS & BOCKIUS LLP
Christopher J. Boran (admitted *pro hac vice*)
christopher.boran@morganlewis.com
110 North Wacker Drive, Suite 2800
Chicago, IL 60606-1511
Tel: +1.312.324.1000

Abbey M. Glenn (Bar No. 267751)
abbey.glenn@morganlewis.com
1111 Pennsylvania Ave, NW
Washington, DC 20004-2541
Tel: +1.202.739.3000

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SARAH PERSONETTE, JAMES SULLIVAN, and DALANA BRAND,<br><br>Plaintiffs,<br><br>vs.<br><br>ELON MUSK, et al.,<br><br>Defendants. | Case No. 3:24-cv-6266-JCS<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS COUNT II OF PLAINTIFFS' COMPLAINT** |

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/ 154037973.8

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO
DISMISS COUNT II OF PLAINTIFFS' COMPLAINT

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ...................................................................................................................... 3

    A. Surcharge Is Not Available To Plaintiffs Because The Plan Is A Top Hat Plan, And Thus There Is No Underlying Breach of Fiduciary Duty ..................... 3

        1. ERISA Is Agnostic As To Whether Top Hat Plans Are Welfare Or Pension Plans, Or Both ................................................................................ 4

            a. Top Hat Plans Need Not Be Pension Plans ..................................... 4

            b. The Plan Is Most Analogous To A Pension Plan, In Any Event ................................................................................................ 7

        2. The Plan Provides Deferred Compensation To Its Participants ................. 8

        3. Defendants Need Not Show That Deferred Compensation Under The Plan Meets The Definition Under Section 409A ............................... 11

        4. Plan Provisions Cannot Create ERISA Fiduciary Duties ......................... 12

    B. Plaintiffs Have Not Pleaded Facts To Support Their Requests For Additional Forms Of Equitable Relief ................................................................. 13

        1. Plaintiffs Are Not Entitled To Restitution or Disgorgement .................... 13

        2. Plaintiffs Failed To Plead the Elements Of Equitable Estoppel ............... 14

III. CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Air Transp. Ass'n of Am. v. City & Cnty. of San Francisco*,
    992 F. Supp. 1149 (N.D. Cal. 1998), *aff'd and remanded*, 266 F.3d 1064 (9th
    Cir. 2001) ................................................................................................................. 6

*Aldridge v. Regions Bank*,
    2024 WL 2819523 (E.D. Tenn. June 3, 2024) ....................................................... 3

*Boden v. St. Elizabeth Med. Ctr., Inc.*,
    404 F. Supp. 3d 1076 (E.D. Ky. 2019) ................................................................ 12

*Caldwell v. Musk, et al.*,
    2024 WL 4654272 (N.D. Cal. Nov. 1, 2024) .............................................. 2, 13, 14

*California Hosp. Ass'n v. Henning*,
    770 F.2d 856 (9th Cir. 1985), *amended*, 783 F.2d 946 (9th Cir. 1986) ................ 6

*Callan v. Merrill Lynch & Co., Inc.*,
    2010 WL 3452371 (S.D. Cal. Aug. 30, 2010) ............................................ 3, 10, 12

*CIGNA Corp. v. Amara*,
    563 U.S. 421 (2011) ............................................................................................... 3

*Cinelli v. Sec. Pac. Corp.*,
    61 F.3d 1437 (9th Cir. 1995) ............................................................................... 12

*Colburn v. Hickory Springs Mfg. Co.*,
    448 F. Supp. 3d 512 (E.D.N.C. 2020) ......................................................... 3, 10, 12

*Collazo v. Infonet Servs. Corp.*,
    2015 WL 13917163 (C.D. Cal. Apr. 8, 2015) ................................................ 10, 12

*Managing Directors' Long Term Incentive Plan ex rel. Comm. v. Boccella*,
    2015 WL 2130876 (S.D.N.Y. May 6, 2015) ................................................. *passim*

*Delaye v. Agripac, Inc.*,
    39 F.3d 235 (9th Cir. 1994) ................................................................................... 7

*Demery v. Extebank Deferred Comp. Plan (B)*,
    216 F.3d 283 (2d Cir. 2000) .......................................................................... 10, 12

*Depot, Inc. v. Caring for Montanans, Inc.*,
    915 F.3d 643 (9th Cir. 2019) ......................................................................... 13, 14

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO
DISMISS COUNT II OF PLAINTIFFS' COMPLAINT

DB1/ 154037973.8

*Ditchey v. Mechanics Bank*,
   2016 WL 730290 (N.D. Cal., Feb. 24, 2016) ............................................................................. 6

*Duggan v. Hobbs*,
   99 F.3d 307 (9th Cir. 1996) ........................................................................................... *passim*

*Fort Halifax Packing Co., Inc., v.* Coyne,
   482 U.S. 1 (1987) ..................................................................................................................... 7

*Gabriel v. Alaska Elec. Pension Fund*,
   773 F.3d 945 (9th Cir. 2014) ............................................................................... 3, 6, 13, 15

*Gilliam v. Nevada Power Co.*,
   488 F.3d 1189 (9th Cir. 2007) ................................................................................................ 5

*Gobeille v. Liberty Mut. Ins. Co.*,
   577 U.S. 312 (2016) ................................................................................................................ 6

*Greany v. W. Farm Bureau Life Ins. Co.*,
   973 F.2d 812 (9th Cir. 1992) .......................................................................................... 14, 15

*Great-W. Life & Annuity Ins. Co. v. Knudson*,
   534 U.S. 204 (2002) .............................................................................................................. 14

*Grigg v. Griffith Co.*,
   2014 WL 109495 (E.D. Cal. Jan. 10, 2014) ........................................................................... 9

*Hughes Aircraft Co. v. Jacobson*,
   525 U.S. 432 (1999) .............................................................................................................. 10

*Kramer v. Am. Elec. Power Exec. Severance Plan*,
   2023 WL 5177429 (S.D. Ohio Aug. 11, 2023) ............................................................. 6, 9, 10

*Kurisu v. Svenhard Swedish Bakery Supp. Key Mgmt. Ret. Plan*,
   2021 WL 3271252 (N.D. Cal. July 30, 2021) ....................................................................... 13

*Loper Bright Enters. v. Raimondo*,
   603 U.S. 369 (2024) ................................................................................................................ 5

*Merrimon v. Unum Life Ins. Co. of Am.*,
   758 F.3d 46 (1st Cir. 2014) ................................................................................................... 10

*Metaxas v. Gateway Bank, F.S.B.*,
   2024 WL 3488247 (N.D. Cal. July 18, 2024) ......................................................................... 3

*Modzelewski v. Resolution Tr. Corp.*,
   14 F.3d 1374 (9th Cir. 1994) ............................................................................................. 9, 11

*Mothe v. Mothe Life Ins. Co.*,
   2012 WL 1565290 (E.D. La. Apr. 30, 2012) .......................................................................... 4

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/ 154037973.8

- ii -

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO
DISMISS COUNT II OF PLAINTIFFS' COMPLAINT

*Pane v. RCA Corp.*,
  868 F.2d 631 (3rd Cir. 1989) .......................................................................................... 9, 11

*Sharma v. Washington Metro. Area Transit Auth.*,
  58 F. Supp. 3d 59 (D.D.C. 2014) ......................................................................................... 13

*Shull v. Ocwen Loan Servg., LLC*,
  2014 WL 1404877 (S.D. Cal. Apr. 10, 2014) ...................................................................... 13

*Soule v. Ret. Income Plan for Salaried Emps. of Rexham Corp.*,
  723 F. Supp. 1138 (W.D. N.C. 1989) ................................................................................... 11

*U.S. v. Migi*,
  329 F.3d 1085 (9th Cir. 2003) ................................................................................................ 4

*Verizon Commc'ns Inc. v. Pizzirani*,
  462 F. Supp. 2d 648 (E.D. Pa. 2006) .................................................................................... 10

*Williams v. United Parcel Serv., Inc.*,
  2018 WL 6136824 (C.D. Cal. Sept. 4, 2018) .................................................................. 2, 13

**Statutes**

26 U.S.C. § 409A ............................................................................................................... 9, 11
29 U.S.C. § 1002 ................................................................................................................ *passim*
29 U.S.C. § 1003(1) ..................................................................................................................... 7
29 U.S.C. § 1051(2) ..................................................................................................................... 8
29 U.S.C. § 1081(a)(3) ................................................................................................................ 8
29 U.S.C. § 1101 ................................................................................................................ *passim*
29 U.S.C. § 1102 ......................................................................................................................... 6
29 U.S.C. § 1104 ......................................................................................................................... 6
29 U.S.C. § 1106 ......................................................................................................................... 6
29 U.S.C. § 1109 ......................................................................................................................... 6
ERISA § 510, 29 U.S.C. § 1140 ....................................................................................... 1, 3, 14

**Other Authorities**

26 C.F.R. § 1.409A-1(b)(1) ....................................................................................................... 11

29 C.F.R. § 2510-3.2 ............................................................................................................... 7, 8

1 ERISA Practice & Procedure § 2:5 .......................................................................................... 5

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/ 154037973.8                           - iii -                    DEFENDANTS' REPLY IN SUPPORT OF MOTION TO
                                                                     DISMISS COUNT II OF PLAINTIFFS' COMPLAINT

Defendants Elon Musk, X Corp. (f/k/a Twitter, Inc.) and the Twitter, Inc. Change of Control and Involuntary Termination Protection Policy (collectively, "Defendants") provide the following reply in support of Defendants' Motion to Dismiss Count II of Plaintiffs' Complaint (Dkt. 28):

## I.  INTRODUCTION

Plaintiffs' Opposition[1] rehashes the circumstances of their for-cause terminations from Twitter and airs general grievances about Defendants. Plaintiffs mischaracterize the record of their misconduct in approving millions of dollars in sweetheart bonuses, engaging in corporate waste, and violating Twitter's policies, the merger agreement, and the acquiror's directives. While Defendants disagree with Plaintiffs' mischaracterizations of the record, those allegations and assertions are irrelevant to the Court's consideration of whether Count II should be dismissed. It remains true that Plaintiffs have not pleaded any basis for the equitable relief that they seek under Count II for an alleged violation of ERISA § 510, 29 U.S.C. § 1140. Their Opposition does not save Count II from dismissal.

Plaintiffs are not entitled to surcharge because the Plan is a "top hat" plan, top hat plans are not subject to ERISA's fiduciary standards, and Plaintiffs, therefore, cannot plead the necessary element of fiduciary breach to support a surcharge claim. Plaintiffs argue that the Plan is not a top hat plan because (1) the Plan is a welfare plan and only pension plans can be top hat plans, and (2) it does not provide for deferred compensation. Plaintiffs are wrong. ERISA is agnostic as to whether top hat plans are welfare or pension plans. 29 U.S.C. §1101(a)(1). ERISA only requires that a top hat plan be "unfunded" and provide "deferred compensation for a select group of management or highly compensated employees." *Id*. That is what the Plan does. There is no authority holding that only pension plans can be top hat plans. For good reason: Any such ruling would violate the plain language of the top hat plan definition, which applies to any "***plan** which is unfunded*" and meets the above requirements. *Id.* (emphasis added). As Congress knew when it enacted this language, ERISA specifically defines the word "plan" to mean "an employee welfare benefit plan *or* an employee pension benefit plan *or* a plan which is both[.]" 29 U.S.C. § 1002(3) (emphasis added). The Court should reject Plaintiffs' attempt to rewrite ERISA.

---

[1] Plaintiffs' Opposition to Defendants' Motion (Dkt. 44) is referred to as "Opposition" or "Opp."

Nor is there any question that the Plan provides deferred compensation. Plaintiffs do not contest that the Plan is unfunded or covers a select group of management or highly compensated employees. Opp. at 13. Plaintiffs only contest the "deferred compensation" element of the top hat definition. *Id.* Deferred compensation is "additional compensation for services already rendered." *Duggan v. Hobbs*, 99 F.3d 307, 312 (9th Cir. 1996). The Plan provides that cash severance and previously deferred equity awards will be paid no less than 61 days *after* termination and may be deferred for another 6 months or more for certain individuals. Dkt. 1-2, ECF Page 2 & 5 of 11 (providing as an example of such additional deferral that "you will receive payment on the first payroll date that occurs on or after the date that is 6 months and 1 day following your termination of employment"). The deferred-equity awards, in particular, are the largest portion of severance benefits provided under the Plan and involve immediate vesting of restricted stock unit ("RSUs") and performance-based awards ("PSUs"), which are, by definition, deferred compensation. The Plan is a top hat plan, and Plaintiffs' surcharge claim should be dismissed.

Likewise, Plaintiffs have not pleaded any basis for the other forms of equitable relief that they seek under Count II. Plaintiffs did not respond to Defendants' arguments concerning their claims for front pay or equitable lien and have, thus, conceded their dismissal. *See Williams v. United Parcel Serv., Inc.*, 2018 WL 6136824, at *11 (C.D. Cal. Sept. 4, 2018). In support of their claims for restitution and disgorgement, Plaintiffs try to distinguish their allegations from those Judge Chesney recently dismissed in a materially identical case filed by another former Twitter executive. *See Caldwell v. Musk, et al.*, 2024 WL 4654272 (N.D. Cal. Nov. 1, 2024). Plaintiffs claim, inexplicably, that the *timing* of their terminations renders their allegations different from those in *Caldwell* (Opp. at 16), but the plaintiff in *Caldwell* was terminated on the same day as Plaintiffs here. Plaintiffs also try to distinguish their allegations from those that Judge Chesney dismissed in *Caldwell* by arguing the RSUs and PSUs at issue in *Caldwell* were funded and paid differently than the equity awards Plaintiffs seek under their restitution and disgorgement claims in this case. This is pure speculation and ignores that the allegations in *Caldwell* also included the November 1, 2022 equity vest. Plaintiffs fail to plausibly allege any difference between their claims and the claims that Judge Chesney dismissed in *Caldwell*, and their claims should also be dismissed.

Finally, Plaintiffs have not stated a claim for equitable estoppel because they have not plausibly alleged, as they must, that Mr. Musk or X made any misrepresentations to them regarding an ambiguous Plan term. Plaintiffs do not identify such a Plan term, and, instead, point to self-serving allegations about communications that Plaintiffs claim to have had with unnamed Twitter employees. Opp. at 20-21. In fact, Plaintiffs do not allege that Mr. Musk had *any* communications with them aside from informing them of (1) an internal investigation at Twitter and (2) the termination of their employment. Dkt. 1 at ¶¶ 70, 84. The Complaint is devoid of allegations that would support equitable estoppel relief. Their Section 510 claim should be dismissed.

## II.   ARGUMENT

### A.   Surcharge Is Not Available To Plaintiffs Because The Plan Is A Top Hat Plan, And Thus There Is No Underlying Breach of Fiduciary Duty

Plaintiffs are not entitled surcharge because the Plan is a top hat plan, which is exempt from ERISA's fiduciary duties. *Metaxas v. Gateway Bank, F.S.B.*, 2024 WL 3488247, at *5 (N.D. Cal. July 18, 2024) ("as a 'top-hat' plan, the PLAN is exempted from ERISA fiduciary duties"); *Callan v. Merrill Lynch & Co., Inc.*, 2010 WL 3452371, at *9 (S.D. Cal. Aug. 30, 2010) (top hat plans are not subject to fiduciary duties because these "plans only apply to highly paid executives" who "are generally not in need of ERISA protection"); *Colburn v. Hickory Springs Mfg. Co.*, 448 F. Supp. 3d 512, 527 (E.D.N.C. 2020) ("Congress intended to carve out the top hat exemption because [of] 'high-echelon employees'"). Fiduciary breach is a necessary element for obtaining surcharge relief under ERISA. *CIGNA Corp. v. Amara*, 563 U.S. 421, 442 (2011) ("surcharge" is monetary relief that might be "equitable" within the meaning of ERISA, but only when awarded to remedy "a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary"); *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 957-58 (9th Cir. 2014) (same); *Aldridge v. Regions Bank*, 2024 WL 2819523, at *4 (E.D. Tenn. June 3, 2024) (top hat plans "are exempt from ERISA's substantive fiduciary requirement"). Where, as here, the Plan is a top hat plan, Plaintiffs' request for surcharge fails as a matter of law.

Plaintiffs contest that the Plan is a top hat plan under ERISA. Opp. at 6. The definition of a top hat plan under ERISA is straightforward. A top hat plan is "a *plan* which is *unfunded* and is

maintained by an employer primarily for the purpose of providing *deferred compensation* for a *select group* of management or highly compensated employees." 29 U.S.C. § 1101(a)(1) (emphasis added). Plaintiffs do not dispute that the Plan is unfunded or that it covers only a select group of management or highly compensated employees. Opp. at 13 ("The Plan is not funded;" and "the Plan was, according to Defendants, only offered to a select group of management or highly compensated Twitter employees" without disputing this fact). Instead, Plaintiffs argue that the Plan is not a top hat plan because (1) it is a welfare plan and only pension plans can be top hat plans, and (2) the Plan does not provide for deferred compensation. Both arguments fail.

### 1. ERISA Is Agnostic As To Whether Top Hat Plans Are Welfare Or Pension Plans, Or Both

#### a. Top Hat Plans Need Not Be Pension Plans

ERISA defines a top hat plan to include any "***plan*** which is unfunded" and meets other stated requirements. 29 U.S.C. § 1101(a)(2) (emphasis added). The term "plan" under ERISA means a welfare plan *or* a pension plan *or* a plan that is both. *Id.* § 1002(3). Thus, nothing in the top hat plan definition remotely suggests that only a "pension plan" can be a top hat plan. Congress took care to separately define, in succession, the term "welfare plan," § 1002(1), then "pension plan," § 1002(2), and then finally the term "plan," § 1002(3). Had Congress intended to provide that only pension plans can be top hat plans, as Plaintiffs contend, then it would have used the defined term "pension plan" in the top hat definition; instead, it chose to use the term "plan" and, thus, plainly provided that top hat plans can be welfare plans, or pension plans, or plans that is both. *See* 29 U.S.C. § 1101 (top hat definition); *id.* § 1002(3) ("plan" definition); *U.S. v. Migi*, 329 F.3d 1085, 1087 (9th Cir. 2003) ("[I]f Congress defines a term in a statute, that same definition applies to the term in other parts of the same statute").

Thus, while Plaintiffs make much of the fact that the Plan states that it is a welfare plan, that has no bearing on whether the Plan qualifies as a top hat plan. Unsurprisingly, courts have repeatedly recognized that welfare plans may also constitute top hat plans. *See, e.g., Managing Directors' Long Term Incentive Plan ex rel. Comm. v. Boccella*, 2015 WL 2130876, at *1 (S.D.N.Y. May 6, 2015) ("The Plan is a 'top hat, unfunded,' 'employee welfare benefit plan as

1  defined in and subject to ERISA;' the Committee is 'the Plan Administrator' and 'fiduciary of the
2  Plan'"); *Mothe v. Mothe Life Ins. Co.*, 2012 WL 1565290, at *2 (E.D. La. Apr. 30, 2012)
3  (recognizing the existence of a "'top hat' welfare benefit plan under ERISA" and that employers
4  may "unilaterally terminate top hat welfare benefit plans").

5  Undeterred, Plaintiffs argue that a footnote in *Gilliam* implies that only pension plans can
6  be top hat plans. Opp. at 6-7 (citing *Gilliam v. Nevada Power Co.*, 488 F.3d 1189, 1193, n. 5 (9th
7  Cir. 2007)). Plaintiffs stretch *Gilliam* too far. The Ninth Circuit was not considering the scope of
8  the top hat definition, and the case involved a "non-qualified pension plan." *Id.* at 1190. As a
9  result, the Ninth Circuit made only a passing reference to the top hat definition in a footnote,
10  indicating that top hat plans "represent a special category of ERISA [pension benefit plans.]" *Id.*
11  at 1193 n.5 (brackets in original). In doing so, the court merely paraphrased a cited secondary
12  source, which states that top hat plans "represent a special category of *ERISA benefit plans* that
13  provide compensation arrangements to a select group of management-level employees." 1 ERISA
14  Practice & Procedure § 2:5, 2-16 to -17 (Clark Boardman Callaghan 2d ed. 2005) (emphasis added).
15  The source does not differentiate between welfare plans or pension plans or plans that are both
16  things. *Id.* *Plainly, however, because the Ninth Circuit case involved only a pension plan,* the
17  court's use of the term "pension plan" simply reflected an intent not to speak more broadly than the
18  facts at hand. It certainly did not hold—or even have occasion to hold—that only pension plans
19  can be top hat plans.[2] *Id.*

20  Plaintiffs also argue that, because top hat plans are exempt from ERISA's funding
21  requirements, it follows that "top hat plans are a type of pension plan [only], because" ERISA's
22  funding requirements do not apply to welfare plans. Opp. at 7. But this logic does not follow. By

---

[2] Plaintiffs also cite a DOL website (https://www.dol.gov/agencies/ebsa/employers-and-advisers/plan-administration-and-compliance/reporting-and-filing/e-file/tophat-plan-filing-instructions) to support their argument that only pension plans can be top hat plans. This section is simply a portal for submitting certain reporting forms and is not binding law. And, while the portal refers to top-hat plans in the context of pension plans, it does not state that top-hat plans *must* be pension plans. In any event, the DOL has no authority to redefine the top hat exemption in a manner that is contrary to the plan language of ERISA even by regulation, let alone via website-posting. *See generally Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024).

definition, top hat plans *must* be unfunded, and thus the exemption from ERISA's funding requirements is necessary to ensure that *pension* plans can lawfully qualify as top-hat plans. That a similar exemption is not required for *welfare* plans does not mean that welfare plans cannot be top hat plans; it means only that the exemption is unnecessary.[3]  Simply put, the requirement that top hat plans must be unfunded—and thus are exempt from any funding requirement—does not suggest that top hat plans can only be pension plans. Plaintiffs' argument also ignores that top hat plans are exempt from many other ERISA requirements (*e.g.*, plan establishment, fiduciary duties, prohibited transactions, and fiduciary liability) to which all *plans* (*i.e.*, pension plans, welfare plans, and plans that are both) are otherwise subject. See 29 U.S.C. §§ 1101(a)(1), 1102, 1104, 1106, 1109. Plaintiffs' argument doesn't work.

Plaintiffs also claim that the district court in *Ditchey v. Mechanics Bank*, 2016 WL 730290, at *3 (N.D. Cal., Feb. 24, 2016) held that a *severance* plan (like the Plan here) was a "welfare benefit plan (and thus, not a top hat pension plan that provided for deferred compensation)." Opp., p. 12. *Ditchey* made no such holding. The decision begins with the simple statement that, "ERISA applies to 'employee welfare benefit plans' which *may* include a severance plan." *Ditchey,* 2016 WL 730290, p. *3 (emphasis added). The court did not hold that a severance plan *must* be a "welfare plan," only that it *can* be. *Id.*  And this makes sense because ERISA expressly recognizes that severance plans can be *either* welfare plans *or* pension plans. See 29 U.S.C. § 1002(2)(B) (recognizing that "severance pay arrangements" can be pension plans or welfare plans, and providing that the "Secretary [of Labor] may by regulation prescribe rules" to help determine into which category a particular severance plan fits).

Ultimately, the best indication of what Congress intended is the plain language of ERISA.

---

[3] Moreover, while welfare plans need not be funded, they often *are* funded, and this circumstance would preclude application of the top-hat exemption. *See, e.g., Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 317 (2016) ("The Plan is self-insured and self-funded, which means that Plan benefits are paid by [the plan sponsor]. The Plan, which qualifies as an 'employee welfare benefit plan' under ERISA"); *California Hosp. Ass'n v. Henning*, 770 F.2d 856, 862 (9th Cir. 1985), *amended*, 783 F.2d 946 (9th Cir. 1986) (ERISA "provisions that expressly mention the funded/unfunded distinction with regard to certain welfare benefit plans"); *Air Transp. Ass'n of Am. v. City & Cnty. of San Francisco*, 992 F. Supp. 1149, 1174 (N.D. Cal. 1998), *aff'd and remanded*, 266 F.3d 1064 (9th Cir. 2001) ("Plaintiffs note that ERISA's definition of employee welfare benefit plans is not restricted to funded plans").

1  If Congress intended that only "pension plans" could qualify as top hat plans, then it would have
2  used the term "pension plan" in the top hat plan definition. But it didn't. Instead, Congress defined
3  top hat plans to include any "***plan** which is unfunded*" and provides "deferred compensation for a
4  select group of management or highly compensated employees." *Id.* § 1101(a)(1) (emphasis
5  added). And ERISA defines "plan" to mean "an employee welfare benefit plan or an employee
6  pension benefit plan or a plan which is both." 29 U.S.C. § 1002(3). Plaintiffs are effectively asking
7  the Court to rewrite the top hat plan definition by replacing the defined-term "plan" with a different
8  defined-term "pension plan." The Court should decline that invitation.

### b.     The Plan Is Most Analogous To A Pension Plan, In Any Event

Even if top hat plans needed to be pension plans (they do not), the function of the Plan is more analogous to a pension plan than a welfare plan. As noted above, within the definition of "pension plan," Congress directed the DOL to prescribe regulations for determining whether "severance pay arrangements . . . shall . . . be treated as welfare plans rather than pension plans." 29 U.S.C. § 1002(2)(B)(i). In other words, Congress contemplated that severance plans could be either welfare plans or pension plans, and DOL regulations help determine which category applies. 29 C.F.R. § 2510.3-2(b)(1)(ii). Tellingly, Plaintiffs ignore these provisions.[4]

The definition of a pension plan under ERISA is a plan that provides retirement income to employees, or "results in a deferral of income by employees for periods extending to the termination of covered employment or beyond." 29 U.S.C. § 1002(2)(A)(ii). The Plan's benefits fit within that definition. *Id.* A welfare plan, conversely, is "maintained for the purpose of providing for its participants or their beneficiaries … (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of [ERISA]." 29 U.S.C. § 1003(1).

---

[4] Plaintiffs' reliance on *Fort Halifax Packing Co., Inc., v.* Coyne, 482 U.S. 1 (1987) and *Delaye v. Agripac, Inc.,* 39 F.3d 235 (9th Cir. 1994) is of no consequence. Those decisions reinforce that, while welfare plans *may* include severance plans – *e.g.*, "[p]rovisions for severance pay *may* constitute an employee welfare plan …," they do not have to. Opp. at p. 11 (emphasis added). Moreover, even Plaintiffs contend that the severance plan the Ninth Circuit addressed in *Duggan* was more akin to a pension plan than a welfare plan. *See* Opp. at 11.

Pursuant to its authority under 29 U.S.C. § 1002(2)(B)(i), the DOL promulgated regulations to help determine when severance plans will be treated as pension plans or welfare plans under ERISA. *See* 29 C.F.R. § 2510.3-2. Under those regulations, severance plans will be treated as welfare plans, as opposed to pension plans, when three factors are met: (i) the severance payments are not directly or indirectly contingent on the employee retiring; (ii) the total amount of payments does not exceed twice the employee's annual compensation; and (iii) the payments under the plan will be completed within two years of the employee's termination of service (provided that the termination was not part of a "program of terminations" as defined under the regulations). *Id*. If any element is not satisfied, then the severance plan is presumptively a pension plan. *Id*.

Here, the severance benefits that Plaintiffs seek easily exceed twice their annual compensation, so the Plan is not a welfare plan under the above regulation and is more akin to a pension plan. Twitter's public filings, of which the Court may take judicial notice, confirm that Personette was paid a salary of $600,000 in 2021. Dkt. 29-3 (Schedule 14A), ECF Page 61. The $17.6 million in severance benefits she claims under the Plan (Dkt. 1 ¶ 151), therefore, easily doubles (in fact, it is almost 30 times) her annual pay. Although Sullivan's and Brand's salaries are not similarly disclosed, considering that their claimed severance benefits of over $21 million and $13 million, respectively, are *ten to twenty times* the $1 million salary paid to Twitter's former CEO (Parag Agrawal), Dkt. 29-3, ECF Page 60/89, there is no question that their claimed severance benefits likewise exceed the threshold prescribed in the above regulation.[5] Dkt. 1 ¶¶ 152, 153.

**2.     The Plan Provides Deferred Compensation To Its Participants**

ERISA does not define what constitutes "deferred compensation" under its top hat rules. *See, e.g.,* 29 U.S.C. § 1051(2); 29 U.S.C. § 1081(a)(3); 29 U.S.C. § 1101(a)(1). So, courts look to case law and regulatory guidance to determine what constitutes deferred compensation. *See Duggan*, 99 F.3d at 311; *Grigg v. Griffith Co.*, 2014 WL 109495, at *4 (E.D. Cal. Jan. 10, 2014).

---

[5] "Annual compensation" under the regulations is limited to compensation that "was paid" to an employee during the year. 29 C.F.R. § 2510-3.2(b)(2)(i). Twitter's Schedule 14A identifies other forms of compensation for Personette and some other executives in addition to salary—like restricted stock—but there is no indication that those amounts were "paid" during the year. *See, e.g.,* Dkt. 29-3 at p. 73/89. To the contrary, the Schedule 14A provides that the stock awards would vest over 16 quarters beginning in November 2021. *Id.* at p. 66/89.

Under that guidance, the definition of deferred compensation is straightforward; it is: "additional compensation for services already rendered." *Duggan*, 99 F.3d at 312. The Plan provides deferred compensation under this standard.

Plaintiffs say that they "relied on their severance plan benefits in remaining with the company through a tumultuous acquisition, which was the very intent of the plan[.]" Opp. at 1. Meaning, the compensation that Plaintiffs hoped to receive under the Plan was compensation that Plaintiffs understood would be paid, if at all, *after* their employment with Twitter ended and for services *already rendered*. *Id.* Contrary to Plaintiffs' characterization of Plan payments as "immediate," participants had to wait at least 61 days after termination to receive their benefits, and those payments could be further deferred by 6 months or more. Opp. at 12; *see also* Dkt. 1-2, ECF Pages 2 & 5 of 11 ("Deferred Payments will be delayed to the extent necessary to avoid the imposition of the additional tax imposed under Section 409A, which generally means that you will receive payment on the first payroll date that occurs on or after the date that is 6 months and 1 day following the termination of your employment").

Plaintiffs' attempt to distinguish *Duggan* falls short. Opp. at 10-12. *Duggan* is directly on point and held that the severance payments "are deferred compensation because they provide compensation for services substantially after the services were rendered." *Duggan*, 99 F.3d at 311. The same is true here, where Plaintiffs' severance benefits are "Deferred Payments" comprised of cash and the value of deferred equity awards granted during prior years of their employment. *See id.* ("Duggan did not receive it until well after he rendered most of the services for which he was being compensated"); *Modzelewski v. Resolution Tr. Corp.*, 14 F.3d 1374, 1377 n. 3 (9th Cir. 1994); *Pane v. RCA Corp.*, 868 F.2d 631, 637 (3rd Cir. 1989); *Kramer v. Am. Elec. Power Exec. Severance Plan*, 2023 WL 5177429, at *1 (S.D. Ohio Aug. 11, 2023) (a plan that "provide[d] a select group of employees with severance benefits if their employment is involuntarily terminated" provided deferred compensation and was a top hat plan).

Plaintiffs' argument that the payments in *Duggan* are different from the payments in this case also misses the mark. The benefits allegedly owed here were to be paid well after Plaintiffs' employment ended, as were the payments in *Duggan*. *Id.* Whether the benefits were paid 61 days,

6 months, 6 years, or longer after Plaintiffs' employment ended is beside the point. *See Merrimon v. Unum Life Ins. Co. of Am.*, 758 F.3d 46, 58–59 (1st Cir. 2014) ("It is clear beyond hope of contradiction that sponsors of ERISA plans have considerable latitude in plan design, including the establishment of methods for paying benefits") (citing *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999)). *Duggan* did not impose some definitive timeline beyond employment-termination when severance must be paid to be "deferred compensation" within the meaning of the top hat exemption. 99 F.3d at 312. Nor did *Duggan* address Deferred Payments like those here which involve accelerated vesting and payment of equity awards (*e.g.*, RSUs and others) from prior years of employment, which courts regularly treat as deferred compensation. *Id.*

Plaintiffs' attempt to distinguish *Demery v. Extebank Deferred Comp. Plan (B)*, 216 F.3d 283, 285 (2d Cir. 2000), *Colburn*, 448 F. Supp. 3d at 518-19, 523-28*;* and *Collazo v. Infonet Servs. Corp.*, 2015 WL 13917163 (C.D. Cal. Apr. 8, 2015) is also misplaced. Opp., pp. 12-13. Defendants cited these cases only to show that the Plan's participants satisfied the "select group of management or highly compensated employees" (Motion, pp. 8-9), an element of the top hat plan definition Plaintiffs do not contest. *See* Section II(A), *supra*. In any event, none of these cases contains any reasoning or holding suggesting that the Plan here does not provide deferred compensation, nor do Plaintiff identify any. *Id.* Plaintiffs also argue that *Callan*, 2010 WL 3452371, is distinguishable because the plan there did not provide a "retirement purpose and systematically provide for deferred income." *Id.* But the quote that Plaintiffs cite in their Opposition pertained to whether the plan at issue was even governed by ERISA in the first place, not whether it qualified as a top hat plan. *Id.*

Equally unavailing is Plaintiffs' argument that there was no agreement between Twitter and Plaintiffs to defer compensation because severance "benefits were not owed or payable unless the contingencies occurred." Opp. at 10-11. Plaintiffs ignore that a *significant* portion of the Deferred Payments provided under the Plan involve RSUs and other performance-based equity awards. Dkt. 1-2, ECF at Pages 2 & 10, of 11. These sorts of deferred equity awards are considered deferred compensation in their own right. *See* Dkt. 1-2 at ECF Page 2 of 9; *Verizon Commc'ns Inc. v. Pizzirani*, 462 F. Supp. 2d 648, 652 (E.D. Pa. 2006) ("RSUs and PSUs are units of deferred compensation that an employee may redeem after a vesting period"); *Soule v. Ret. Income Plan for*

1  *Salaried Emps. of Rexham Corp.*, 723 F. Supp. 1138, 1141–42 (W.D. N.C. 1989) ("Performance
2  units provide for the Company to pay the employee compensation at a future date"). Regardless,
3  that deferred compensation is only paid if certain contingencies are satisfied—like not being
4  terminated for cause—is a common feature of both severance plans and top hat plans. *See Duggan*,
5  99 F.3d at 311; *Pane*, 868 F.2d at 637; *Modzelewski*, 14 F.3d 1374, 1377 n. 3. The existence of
6  contingencies for payment of severance does not impact the analysis.

        **3.  Defendants Need Not Show That Deferred Compensation Under The Plan Meets The Definition Under Section 409A**

Plaintiffs' strained arguments regarding 26 U.S.C. § 409A of the Internal Revenue Code ("Section 409A") do not advance their cause, either. Opp. at 9. Section 409A governs tax issues that arise in the context of deferred compensation; it dictates whether deferred compensation is subject to tax penalties depending on the manner and timing of payment. 26 U.S.C. § 409A. To be sure, the top hat definition is not limited to "deferred compensation" within the meaning of Section 409A. *Id.* Even so, that the Plan here expressly provides that its Deferred Payments will be paid in a manner designed to avoid adverse tax consequences under Section 409A reinforces that those payments are deferred compensation in the first instance.

Plaintiffs try to brush the Plan's Section 409A language under the rug, arguing that "all this language does is say that the plan sponsor is aware of Section 409A[.]" Opp. at 9. Plaintiffs are mistaken. Under Section 409A, a "plan provides for the deferral of compensation" that may be subject to tax penalties, if it gives an employee "a *legally binding right* during a taxable year to compensation that, pursuant to the terms of the plan, *is or may be payable . . . in a later taxable year*." 26 C.F.R. § 1.409A-1(b)(1) (emphasis added). The Plan does that here, as Plaintiffs' own claims confirm: Plaintiffs claim they had "a legally binding right" to severance benefits under the Plan in November 2022 when they were terminated, and that those severance benefits were to be paid to them *no earlier* than 61 days later in January 2023—*i.e.*, "in a later taxable year." *Id.* Contrary to Plaintiffs' assertions, the Plan's Section 409A language serves an important purpose: To ensure that the deferred compensation it provides is paid at a time and in a manner that does not trigger adverse tax consequences for participants.

### 4.  Plan Provisions Cannot Create ERISA Fiduciary Duties

Finally, it makes no difference that the Plan contemplates an administrator "subject to the fiduciary standards of ERISA when acting in such capacity." Opp. at 3, 6 (citing Dkt. 1-1, ECF Page 6 of 11; Ex. A-C). This provision merely provides that the designated Plan administrator is subject to fiduciary standards *to the extent* those standards apply under ERISA. *Id.* And ERISA's "fiduciary standards" do not apply if the Plan is a top hat plan—a determination that is not always clear cut and counsels in favor of drafting plan language to cover multiple possibilities. In any event, Courts routinely reject arguments, like Plaintiffs' here, that plan language dictates whether and to what extent ERISA's fiduciary duty or other requirements apply. *See, e.g.*, *Cinelli v. Sec. Pac. Corp.*, 61 F.3d 1437, 1443 (9th Cir. 1995) (ERISA determines when its provisions apply because "the intent to create a plan is not enough") (citing *Watkins v. Westinghouse Hanford* Co., 12 F.3d 1517 (9th Cir. 1993)).[6]

Plan language cannot trump the text of ERISA. That is why courts in similar contexts—namely, claimed fiduciary status under ERISA-exempt "church plans"—have rejected arguments that plan language can impose ERISA fiduciary duties on the administrators of plans that are otherwise exempt from ERISA's fiduciary requirements.[7] *See, e.g., Boden v. St. Elizabeth Med. Ctr., Inc.*, 404 F. Supp. 3d 1076, 1085, 1094 (E.D. Ky. 2019) (dismissing ERISA breach of fiduciary duty claim even where the "Plan document indicates that … 'The Committee shall be the plan administrator and the named fiduciary of the plan'" because the plan was a Church plan so "the requirements of ERISA do not apply"); *Sharma v. Washington Metro. Area Transit Auth.*, 58 F. Supp. 3d 59, 64 (D.D.C. 2014) ("Plaintiff offers no justification for challenging the authorities

---

[6] In a footnote, Plaintiffs argue that Twitter did not file a Top Hat Plan registration with the DOL. Opp. at 8, n. 2. But whether or not Twitter filed a document that top hat plans are directed to file does not dictate whether the plan is a top hat plan in the first place. *Demery*, 216 F.3d at 290 (concluding the plan was a top hat plan, despite the fact that "defendants failed to file registration statements … with the Department of Labor and the Internal Revenue Service for ten years").

[7] Plaintiffs cite three cases from Defendants' Motion that they claim show that the Plan's language is important in determining what type of plan is at issue. *See* Opp. at 8 (citing *Collazo v. Infonet Servs. Corp.*, 2015 WL 13917163, at *1 (C.D. Cal. Apr. 8, 2015); *Colburn v. Hickory Springs Mfg. Co.*, 448 F. Supp. 3d 512, 523 (E.D. N.C. 2020); and *Callan v. Merrill Lynch & Co., Inc.*, 2010 WL 3452371, at *12 (S.D. Cal. Aug. 30, 2010). None of these cases hold that use of fiduciary language in a plan means the plan cannot be a top hat plan.

1  that have held that the [plan] is not subject to ERISA," and thus rejecting "plaintiff's [fiduciary
2  breach] ERISA claims" where plan conferred fiduciary authority on an administrative committee").[8]

### B. Plaintiffs Have Not Pleaded Facts To Support Their Requests For Additional Forms Of Equitable Relief

Plaintiffs failed to plausibly allege that they are entitled to the other forms of equitable relief sought in their Complaint. Plaintiffs do not respond to Defendants' Motion to Dismiss their claims for front pay or equitable lien, so they have waived their right to seek those forms of relief. *Williams*, 2018 WL 6136824, at *11; *Shull v. Ocwen Loan Servg., LLC*, 2014 WL 1404877, at *2 (S.D. Cal. Apr. 10, 2014). Plaintiffs' Opposition does not save their remaining claims for restitution, disgorgement, or equitable estoppel from dismissal.

#### 1. Plaintiffs Are Not Entitled To Restitution or Disgorgement

Plaintiffs have not sufficiently pleaded facts to support claims for restitution or disgorgement. While they acknowledge that Judge Chesney dismissed nearly identical claims in *Caldwell v. Musk*, Plaintiffs argue that they are different because they have alleged additional facts that were absent in *Caldwell*. Opp. at 16. They are incorrect.

Plaintiffs do not dispute that restitution in equity is available only "where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Gabriel,* 773 F.3d at 954-55; *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 663 (9th Cir. 2019); *Caldwell*, 2024 WL 4654272, at *3. They do not dispute that disgorgement is a form of restitution "measured by the defendant's wrongful gain rather than by the plaintiff's loss." *Depot*, 915 F.3d at 663 (internal quotations and citation omitted). Or, that equitable disgorgement is only "available when the plaintiff is entitled to a constructive trust on *particular property* held by the defendant that allows the plaintiff to recover profits produced by the defendant's use of *that property*." *Id.* (quoting *Great-W. Life & Annuity*

---

[8] Plaintiffs' citations to the sister *Agrawal*, *Caldwell*, and *Kaiden* cases are irrelevant because the top hat issue was not briefed or considered in those cases. Opp. at p. 14. And Plaintiffs' citation to *Kurisu v. Svenhard Swedish Bakery Supp. Key Mgmt. Ret. Plan*, 2021 WL 3271252, at *10 (N.D. Cal. July 30, 2021) is similarly unhelpful to their claims. Opp. at 15. *Kurisu* involved factual questions about whether the plan covered a select group of employees. *Kurisu*, 2021 WL 3271252, at *10. No such questions exist in this case. Opp. at 13.

*Ins. Co. v. Knudson*, 534 U.S. 204, 214 n.2 (2002)) (emphasis added). Plaintiffs have not plausibly alleged that any particular property allegedly owed to them is clearly traceable to Mr. Musk or X Corp. Dkt. 1, *generally*.

Plaintiffs claim that, based on the alleged timing of their termination, the Court should *infer* that the payments allegedly due to Plaintiffs under the Plan are clearly traceable to funds or property in X Corp's possession: "Given the timing at issue, the Complaint supports an inference that such payments had been set aside and scheduled to payment to specific individuals." Opp. at 17. This is pure speculation, and it makes no sense. Nor does the timing of Plaintiffs' termination somehow distinguish their claims for equitable relief from those that were rejected in *Caldwell*. Here, Plaintiffs allege that they were terminated on November 27, 2022 (*see* Dkt. 1, ¶¶ 8-10), the *same day* as the plaintiff in *Caldwell*. 2024 WL 4654272, at *2. If the timing of the plaintiff's termination in *Caldwell* did not impact the equitable relief analysis in that case, there is no reason the same timing should do so here. Further, Plaintiffs argue that their claims are also distinguishable from *Caldwell* because their allegations are based on a "different category of payments." Opp. at 17. This ignores that the plaintiffs in *Caldwell* sought restitution and disgorgement based on the *same* November 1, 2022 equity vest that Plaintiffs identify here. *See Caldwell*, 2024 WL 4654272, at *2 ("[A]ccording to Caldwell, X failed to 'vest' shares to which, under the Award Agreement, he was entitled as of November 1, 2022[.]"). In any event, whether the equity at issue was subject to vesting under the Plan or not, would have no impact on how the equity was funded. Plaintiffs allege nothing to the contrary.

### 2. Plaintiffs Failed To Plead the Elements Of Equitable Estoppel

Defendants have found no authority, and Plaintiffs cite none, that would allow Plaintiffs to seek equitable estoppel under an ERISA § 510 claim. On this basis, Plaintiffs' request for equitable estoppel should be dismissed. In any event, among other requirements, to state a claim for equitable estoppel under ERISA, a plaintiff must plausibly allege that the defendant made a misrepresentation to them regarding an ambiguous Plan term. *Greany v. W. Farm Bureau Life Ins. Co.*, 973 F.2d 812, 822 n.9 (9th Cir. 1992); *Gabriel,* 773 F.3d at 955. Plaintiffs make no such allegation here. Plaintiffs claim that Defendants made misrepresentations to them by communicating that

Twitter was in the process of providing salary and benefits prior to their termination. Opp. at 18 (citing Dkt. 1, ¶ 79). Defendants disagree, but Plaintiffs misread the authority governing equitable estoppel, which requires that the ambiguity and alleged misrepresentations concern an ambiguous *plan* term. *Greany*, 973 F.2d at 822, n. 9. Plaintiffs' references to general misrepresentations that they claim were made to them "regarding their ongoing employment during November 2022 and their entitlement to Plan benefits" do not involve statements about any allegedly ambiguous Plan terms. Opp. at 18-20. This alone dooms Plaintiffs' estoppel theory.

Likewise, Plaintiffs' argument that they have alleged the type of "extraordinary" circumstances that would entitle them to equitable estoppel falls short. Opp. at 21; *Gabriel*, 773 F.3d at 957. The types of extraordinary circumstances that warrant equitable estoppel relief are, for example, where an employer intends to induce action or forbearance by the employee and seeks to profit at the employees' expense. *Id.* While it is unclear *who* Plaintiffs contend allegedly made misrepresentations to them, there are no allegations that Mr. Musk or X made them, let alone with intent to induce Plaintiffs to act or fail to act in some way. Dkt. 1, *generally*. In fact, Plaintiffs do not allege that Mr. Musk ever communicated with them at all, other than to send letters that asked Personette and Brand to participate in an internal investigation and to terminate Plaintiffs' employment with Twitter. Dkt. 1, ¶¶ 70, 84. For this reason, too, Plaintiffs' estoppel theory fails.[9]

### III.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that their Motion to Dismiss be granted, and Plaintiffs' Count II dismissed, with prejudice.

Dated: January 17, 2025            MORGAN, LEWIS & BOCKIUS LLP

By /s/ *Christopher Boran*
          Christopher Boran (admitted *pro hac vice*)

*Attorneys for Defendants*

---

[9] Plaintiffs appear to assert that they do not need to meet the "additional requirements" for equitable estoppel under ERISA as enumerated in *Gabriel*, 773 F.3d at 955 (*see* Opp. at 21, fn. 5). *Gabriel* is binding precedent, and each of the elements identified in *Gabriel* must be satisfied.